906 F.2d 1371
 12 Employee Benefits Ca 2331
 NORTHERN CALIFORNIA RETAIL CLERKS UNIONS AND FOOD EMPLOYERS
JOINT PENSION TRUST FUND; Board of Trustees of the Northern
California Retail Clerks Unions and Food Employers Joint
Pension Trust Fund; Northern California Retail Clerks
Unions--Employers Vacation Fund; Board of Trustees of the
Northern California Retail Clerks Unions--Employers Vacation
Fund; Valley Clerks Health and Welfare Fund; Board of
Trustees of the Valley Clerks Health and Welfare Fund,
Plaintiffs-Appellants,
v.
JUMBO MARKETS, INC., d/b/a Jumbo Market, Defendant-Appellee.
 No. 89-15039.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 13, 1990.
Decided July 2, 1990.
As Amended Aug. 27, 1990.
 
 Fred D. Lonsdale, Davis, Cowell & Bowe, San Francisco, Cal., for plaintiffs-appellants.
 Dennis R. Murphy, and Joyce A. Vermeersch, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before BOOCHEVER, WIGGINS and NOONAN, Circuit Judges.
 NOONAN, Circuit Judge:
 
 
 1
 The six plaintiffs (the Trust Funds) brought this action against the defendant (Jumbo Market) seeking the recovery of monies due the Trust Funds that Jumbo Market failed to pay. Jurisdiction for the action was conferred by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1132 (1982). From a decision of the district court on cross-motions for summary judgment the Trust Funds appeal only the judgment as to their claim for unpaid vacation hours. We reverse.
 
 FACTS
 
 2
 Jumbo Market had entered into a collective bargaining agreement with United Food and Commercial Workers Local 588 and its predecessor, Retail Clerks Union Local 588, an agreement in effect at all times relevant to this action. By the terms of the agreement Jumbo Market agreed to be bound by the terms of the trusts which set up the Trust Funds. The trusts provide pension, vacation and health benefits to employees in the retail trade throughout Northern California. Jumbo Market's contributions are to be made on the basis of "all straight time hours worked, including all hours compensated such as vacations and holidays."
 
 
 3
 The trustees of the Trust Funds are four nominees of the unions and four nominees of the employers. The trust agreements restate the employers' obligation of each employer to contribute the amount required by its collective bargaining agreement and restate the obligation to determine the hours worked by including the hours paid for but not worked, as in the case of holidays and vacations. If an employer fails or refuses to pay any of the contributions required under the trust, the trustees at their option have the right to make contributions for the employer from the Trust Fund and, if they do so, the amount is immediately due and payable from that employer to the trustees. The trustees have the right to require reports necessary to the fulfillment of the plan and the employers agree to supply such reports. The trustees also have the power to construe the provisions of the trust agreements and any construction adopted by the trustees in good faith is binding upon all persons concerned.
 
 
 4
 In September 1984 Jumbo Market discovered a mistake in the way vacation hours were computed. The mistake was corrected, and Jumbo Market began to report the hours per month correctly. Jumbo Market, however, did not inform the Trust Funds that the earlier reporting had been erroneous and Jumbo Market did not correct the past errors. In August 1986 the Trust Funds conducted a full audit of Jumbo Market for the period January 1, 1982 to December 31, 1985. The auditors reported random errors totaling 543 unreported hours; unreported hours for retired employees totaling 4,055 hours; and unreported vacation hours during the first 34 months of the audit period totaling 33,774 hours.
 
 
 5
 On September 21, 1987 Jumbo Market tendered the Trust Funds $38,752.22 representing the sum of money it believed due as a result of the audit. The Trust Funds disagreed with Jumbo Market's estimate of what was due and brought this action on February 1, 1988.
 
 PROCEEDINGS
 
 6
 On cross-motions for summary judgment the district court reduced the number of unreported random hours for which recovery could be had to 102.54. The district court found that all of the hours relating to retirees should have been paid for. As to the vacation hours, the district court found that 33,774 hours had not been reported because of a computer error. Of the total, the district court held that 8,940.18 hours occurred after February 1, 1984 and, therefore, were not barred by the applicable statute of limitations. The remaining hours the district court held to be barred by the four-year California statute. No tolling of the statute was found.
 
 
 7
 The Trust Funds appeal.
 
 ANALYSIS
 
 8
 The district court was correct in finding that the statute of limitations was the four-year statute provided by California law for breach of a written contract. Cal. of Civ.Proc.Code Sec. 337 (West 1982). In ERISA actions the federal courts employ a state statute of limitations. Hawaii Carpenters Trust Fund v. Waiola Carpenter Shop, 823 F.2d 289, 298 (9th Cir.1987).
 
 
 9
 Because the cause of action is federal, however, federal law determines the time at which the cause of action accrues. Under federal law that time is when the plaintiff knows or has reason to know of the injury that is the basis of the action. Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, 827 F.2d 1324, 1328 (9th Cir.1987). Neither the parties nor the district court focused on the time at which the Trust Funds had reason to know of the underpayment. The record is unclear as to when they did have reason to know. It will be necessary for this date to be determined.
 
 
 10
 In determining the date the Trust Funds had reason to know, the district court may consider evidence showing that the shift in September 1984 to reporting the correct number of hours was so great a change that the Trust Funds should have been alerted to the fact that the previous reporting had been erroneous. The question centered on the facts known to the Trust Funds from which they reasonably should have known that there was past substantial error.
 
 
 11
 There was, however, no duty under the trust agreement on the Trust Funds to make an independent verification in September 1984 if the facts known to them did not give them reason to know of the error. The employer-contributors were engaged in a program with the Union for the benefit of the retail clerks who were their employees. The employers and the Union were not in all respects hostile, arm's length parties to a contract. In a variety of situations a person or entity who is not an express trustee may take on responsibilities of another which impose a fiduciary obligation. See 5 A. Scott & W. Fratcher, The Law of Trusts, Sec. 495 (1989). The employers in ascertaining and reporting the hours worked put themselves in such a fiduciary relation.
 
 
 12
 The notion that the employers were free to cheat their employees or bury their reporting mistakes is repugnant to the mutual character of the enterprise. Bringing this action, the trustees of the Trust Funds (trustees who include an equal number of employer representatives) have in effect construed the reporting obligation of the employers under the trust declarations to be a fiduciary obligation. We cannot say that this determination was arbitrary.
 
 
 13
 It may be argued that Jumbo Market had not taken on a fiduciary obligation because the trustees of the Trust Fund have the duty of policing the employer contributors. Central States, Southeast & Southwest Areas Pension Fund v. Central Trans. Inc., 472 U.S. 559, 573, 105 S.Ct. 2833, 2841-42, 86 L.Ed.2d 447 (1984). That the trustees of the Trust Funds have their own duties to verify the basis of employer contributions does not diminish the responsibilities of the employers. It is common to audit fiduciaries; they remain fiduciaries.
 
 
 14
 To the extent that there is law on the point in this circuit, a district court has held that pension funds do place trust and confidence in the employer-contributors, Seymour v. Hull & Moreland Eng'g, 418 F.Supp. 190, 197 (C.D.Cal.1976), and this court accepted the finding of the district court without comment. 605 F.2d 1105, 1113 (9th Cir.1979) (Anderson, J.). We are not bound by this incidental reference to the district court's holding, but we do take it as an indication that there is nothing arbitrary in finding that, in taking on the obligation to report the basis on which contributions will be made to an ERISA fund, the employer undertakes a fiduciary obligation which must be faithfully and punctiliously observed.
 
 
 15
 By keeping secret its substantial underreporting, Jumbo Market failed to observe its fiduciary reporting duty. The statute of limitations did not begin to run until the Trust Funds had reason to know of the underpayment.
 
 
 16
 REMANDED for proceedings consistent with this opinion.
 
 WIGGINS, Circuit Judge, concurring:
 
 17
 I agree that this case must be remanded to the district court to determine the factual issue of when the plaintiff-trustees should have known of the failure of the defendant-employer to pay the proper amount to the trust funds. The resolution of this issue is necessary to a determination of when the plaintiffs' cause of action against the defendant accrued. I write separately because I would not decide the question of whether the defendant had a fiduciary duty to pay the proper amount to the trust funds. This question is not involved in the statute of limitations issue before the court.
 
 
 18
 We are in agreement that the four year limitation period for actions of this type by the trustees is proper and that such four year period accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action." Maj.Op. at 6648. The present action was filed on February 1, 1988. Thus, all payment shortages of which the trustees by February 1, 1984 did not know, and in the exercise of reasonable care, could not have known, may be recovered in this action. This clearly includes all shortages which occurred after February 1, 1984. But it may also include some or all of the shortages which occurred from January 1, 1982 to February 1, 1984. For example, perhaps the trustees should not have been alerted to the existence of any of these shortages until September of 1984, when the employer discovered its payment error and began to pay the proper amount to the trust funds. Or, perhaps the trustees first should have learned that there were such shortages only in August of 1986, when the trustees audited the employer's books. If either of these possibilities is found to exist, the present action is timely filed as to all sums at issue, including all those sums due and unpaid from January 1, 1982 to February 1, 1984, without regard to the question of whether the parties are fiduciaries.
 
 
 19
 By finding that the trust agreement makes the employer a fiduciary, the court defines their legal relationship, but it does not change the result in this case. For example, if the employer owed a fiduciary duty to the trustees to pay the proper amount to the trust funds, perhaps the employer had a duty to disclose that it had failed to pay the proper amount to the trust funds from January 1, 1982 to September 1, 1984 on or about the date that it discovered its error. Such a disclosure, if made, would have given the trustees notice that there were sums due and unpaid from January 1, 1982 to September 1, 1984 and would have commenced the running of the statutory period to recover these sums. However, that hypothesis is not this case. The employer did not give notice to the trustees.
 
 
 20
 If the employer had a fiduciary duty to pay the proper amount to the trust funds, the employer's failure to give notice of its underpayments might give rise to an additional cause of action for breach of fiduciary duties. But the trustees did not assert a cause of action for breach of fiduciary duty before this court.
 
 
 21
 The only other possible consequence of the existence of a fiduciary relationship between the trustees and the employer that I see involves the frequency of the trustees' audit of the employer's books. The employer might on remand argue that the trustees should have audited the trust funds more frequently than every four years and, if the trustees had done so, they would have discovered some of the shortages prior to February 1, 1984. However, if the employer owed a fiduciary duty to the trustees, the trustees could be excused from auditing the trust funds more frequently than every four years.
 
 
 22
 We must remember, though, that this action was timely filed for all shortages of which the trustees knew or should have known by February 1, 1984. The first shortage occurred in January 1982. Therefore, the trustees would not, as the result of an audit, have discovered the shortages earlier than February 1984 unless they had audited the trust funds within approximately two years of the first shortage. I do not believe that the remote possibility that the employer could show on remand that in the absence of a fiduciary duty on the part of the employer, the trustees should have audited the trust funds more frequently than every two years justifies our deciding as a matter of law whether such a fiduciary duty exists.
 
 
 23
 This case must be remanded to the trial court to determine when the trustees' cause of action accrued. In my view, whether the employer owes a fiduciary duty to the trustees does not affect that determination and, therefore, should not be decided.