Willie H. KENNEDY

v.

ELECTRICIANS PENSION PLAN, et al.

Civ. A. No. 89–614–A.

United States District Court, M.D. Louisiana.

Jan. 17, 1991.

---

Charles Wm. Roberts, Baton Rouge, La., for plaintiff.

W.P. Wray, Jr., M.J. Bodenhamer, Wray & Kratch, Baton Rouge, La., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN V. PARKER, Chief Judge.

This matter has been submitted to the court upon a joint stipulation in which the authenticity of all exhibits has been stipulated and many facts have been stipulated. In addition, several depositions have been filed. The court now makes its findings of fact and conclusions of law as required by Rule 52, Fed.R.Civ.P. The joint stipulation will not be repeated here.

The salient facts, so far as this court is concerned follow:

(1) Plaintiff, Willie H. Kennedy, has been a member of Local Union 995 of the International Brotherhood of Electrical Workers, AFL–CIO (hereafter "Local 995") since February 3, 1959. From August 1956 through the date of his initiation, plaintiff was employed as an apprentice.

(2) All of plaintiff's employment, both apprentice and union card, has been under collective bargaining agreements between Local 995 and various employers, all of which fix rates of pay and benefits for apprentices as well as journeymen electricians.

(3) Local 995 established, effective October 1, 1970, a pension and retirement plan (hereafter "the Plan"). The Plan is a defined benefits pension plan and is subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.

(4) Plaintiff is a vested participant in the Plan. He has not retired and has not applied to retire.

(5) The Plan is administered by an administrator appointed by the Plan Trustees, composed of both union and employer members.

(6) The Plan is funded by contributions made by those employers who are signatory to the collective bargaining agreements with Local 995. Contributions under each such agreement are and have been made for apprentices.

(7) The Plan provides for past service credit prior to October 1, 1970 but limits prior service to twenty years.

(8) On March 4, 1988, plaintiff requested that the Trustees grant him prior service credit for his work as an apprentice from August 1956 through his date of initiation, February 3, 1959.

(9) On April 4, 1988, the Trustees informed plaintiff that his request had been denied:

> Because having status as an apprentice is not, ..., 'reasonable evidence of an Employee's dependence upon such Employment,' and because status as an apprentice is not sufficient proof of 'continuous and successive employment.'

(10) Thereafter, plaintiff furnished additional employment records which established that from August 15, 1956 through February 3, 1959, Local 995 determined plaintiff's work assignments, that all such work was for employers who were signatories to collective bargaining agreements

with Local 995, that such work was continuous throughout the period, that plaintiff was dependent for his livelihood upon his trade as an electrician and that plaintiff worked at least the minimum number of hours required for retirement benefits throughout that period.

(11) Defendants no longer dispute these facts.

(12) On October 3, 1988, plaintiff was notified that the Trustees had reconsidered his application and that they "confirmed denial of the application."

CONCLUSIONS OF LAW

(1) This court has subject matter jurisdiction because this is an action brought by a Plan participant under 29 U.S.C. § 1132(a)(1)(B).

(2) The only issue is whether, under the Plan's provisions, employees who were apprentices prior to the October 1, 1970 effective date of the Plan may claim prior service credit for work as apprentices.

(3) Statute of Limitations

Defendants have pled the time bar of 29 U.S.C. § 1113 which establishes a three year limitation period for actions "with respect to a fiduciary's breach of any responsibility, duty or obligation under this part...." Section 1109 specifically provides that a fiduciary "who breaches any of the responsibilities, obligations or duties imposed upon fiduciaries ... shall be personally liable to make good to such plan any losses."

It is undisputed that the Plan, beginning in 1980, regularly sent quarterly notices to Plan participants. These notices contained information relative to the hours which had been worked during the preceding quarter and for which employers and other information about benefits. Each notice included an entry which read: "Pension Credit, prior service." In the case of plaintiff, the "prior service" entry showed "11.00" consistently. Defendants argue that since plaintiff had received these notices regularly since at least 1980 with that same entry, he was placed on notice that the Trustees were giving him prior service credit only

for the eleven years after his initiation as a member of Local 995. Since the suit was not filed within three years of the time he "had actual knowledge of the breach or violation," defendants argue that plaintiff's action is time barred.

The argument is not well founded. Section 1132 authorizes a number of different actions by participants, by beneficiaries, by the Secretary and even by fiduciaries.

Section 1132(a)(1)(B) specifically authorizes an action by a participant "to clarify his rights to future benefits."

Section 1132(a)(2) provides that an action to impose liability against a fiduciary under the provisions of Section 1109 may be brought by the Secretary, or a participant, or a beneficiary, or a fiduciary. Section 1132 authorizes other types of actions also and the limitation provision of § 1113 applies specifically only to actions "with respect to a fiduciary's breach of any responsibility, duty or obligation."

■ This action is clearly one to clarify future benefits under the Plan. It is not an action "with respect to" fiduciary duties. Trustees of plans make countless decisions as to granting or denying benefits throughout their administration. The position advocated by defendants would convert every such decision where error is claimed into a violation of fiduciary duty. Such is simply not the case.

■ Plaintiff's cause of action under § 1132(a)(1)(B) accrued at the earliest when the Trustees denied his application. In this circuit an ERISA cause of action:

> (D)oes not become a presently enforceable demand until a claim is denied. To hold otherwise 'would put an almost intolerable burden on employees covered by pension plans. It would require individuals who are unversed in the law to

be constantly vigilant ... Moreover, claims filed before a pension actually has been denied might be challenged for lack of ripeness ...'

> Requiring piecemeal changes before an actual denial has occurred would also result in a great waste of judicial resources.

*Paris v. Profit Sharing Plan ETC,* 637 F.2d 357, 361 (5th Cir.1981) cert. denied 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981), quoting *Morgan v. Laborers Pension Trust Fund,* 433 F.Supp. 518, 522, n. 5 (N.D.Calif.1977).

This is an action by a participant which is specifically authorized by ERISA and the limitations period of Section 1113 has no application.[1]

**(4) Laches**

■ Defendants have also pleaded the doctrine of laches but the court disagrees. There is no laches here. This action has been filed timely.

**(5) The Decision of the Trustee**

As noted, it is now undisputed that plaintiff qualifies in every respect for prior service credit. The only reason that the Trustees have denied his application is that they now interpret the Plan as authorizing prior service credit only to members of the union, excluding all time as apprentices.

The following provisions of the Plan are pertinent to our discussion:

> 1. The term "Employee" is defined as:
>
> "... an Employee covered by a Collective Bargaining Agreement or any written agreement requiring Employer contributions on his behalf ..." Section 1.07.

---

**1.** Assuming for purposes of argument that defendants are correct that the claim arose in 1980 because of the quarterly notices, § 1113 does not apply to claims by participants such as this. The statute contains no limitation period for such actions. See *Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450,* 827 F.2d 1324 (9th Cir.1987) and *Northern California Retail Clerks Unions and Food Employers Joint Pension*

*Trust Fund v. Jumbo Markets, Inc.,* 906 F.2d 1371 (9th Cir.1990). Since ERISA does not specify any limitation provision for actions of this nature, the federal courts look to state law. Id. In this case we look to Louisiana law. Article 3499 of the Civil Code provides for a ten year prescriptive period for actions of this nature. Since the action was commenced within ten years, it is not prescribed under any theory.

2. As to past service credits, the Plan provides:

Section 4.01(b) **Service before October 1, 1970—Past Service Credits**

An Employee will be credited with one Past Service Credit for each continuous and successive Plan Year, not to exceed twenty (20), before October 1, 1970, **in which he was dependent for livelihood upon his trade as an Electrician within the jurisdiction of the Union.** (emphasis supplied)

Following provisions of the same section establish procedures whereby an employee may establish that he is entitled to credit:

It is recognized that it would be difficult for any Employee to prove where he worked in Covered Employment for the years prior to the time the Pension Fund started. Therefore, for purposes of this Section, the Trustees shall consider any reasonable evidence of an Employee's dependence upon such Employment in determining whether to grant the Employee Past Service Credits.

A presumption is established that an Employee was engaged in Covered Employment throughout the period of his continuous membership in the Collective Bargaining Unit represented by the Union between October 1, 1950 and October 1, 1970. All Employees who were active members of the Collective Bargaining Unit represented by the Union on October 1, 1970, shall be given Past Service Credit for each full year of continuous and unbroken membership in the Collective Bargaining Unit represented by the Union dating back from that date, provided that no Past Service Credits shall be granted for years prior to October 1, 1950. The membership records of the Local Union or the International Union with which the Local is affiliated may be used as sufficient proof of membership and its continuity (based upon such records or other evidences of membership or coverage).

For any period not covered by the preceeding sentence, an Employee may be entitled to receive a year of Past Service Credit for each year between October 1, 1950 and October 1, 1970 in which he was dependent upon such Employment, as evidenced by Social Security records, payroll records, tax records, or any other evidence of such Employment deemed acceptable by the Board of Trustees.

However, such employment must be continuous dating back from October 1, 1970; that is, for any year between October 1, 1950 and October 1, 1970 in which such Employee was not dependent for his livelihood upon such Employment, only years beginning with the return to Covered Employment will be recognized.

The decision of the Trustees as to the amount of Past Service Credits granted to an Employee shall be final and binding.

The Trustees take the position that they have consistently construed the Plan as granting prior service credit only to union members. The original Plan adopted in 1970 did so provide in Article III, Section 1:

Section 1. *PAST SERVICE PENSION CREDITS—FOR PERIODS PRIOR TO OCTOBER 1, 1970.* It is recognized that it would be difficult for some Employees to prove where they worked in Covered Employment for the years prior to the time the Pension Plan started, and therefore a conclusive presumption is established that an Employee was engaged in Covered Employment throughout the period of his continuous membership in the Union between OCTOBER 1, 1950 and OCTOBER 1, 1970. **All Employees who were members in good standing of the Union on October 1, 1970, shall be given credit for Past Service for all years of continuous and unbroken membership in the Union dating back from that date.** Such Employees will be given a year's Past Service Pension Credit for each full Pension Credit Year before OCTOBER 1, 1970, during which he paid dues to the Union as a member, provided the service backward from that date is unbroken and provided further that no prior service credit shall be granted for years prior to OCTOBER 1, 1950 ... (emphasis supplied)

It is undisputed that the Plan was amended in 1976 and now reads as quoted in Section 4.01(b) above.

Plaintiff argues that whatever the meaning of the provisions of the original Plan, the 1976 amendment clearly awards past service credit to each employee for each year "in which he was dependent for livelihood upon his trade as an electrician within the jurisdiction of the Union." The definition of "employee" clearly includes all persons who were covered by collective bargaining agreements with Local 995. There is no question but that apprentices were covered in each collective bargaining agreement. Thus, plaintiff argues that employees are clearly entitled to prior service credit for their time as apprentices.

Plaintiff also argues that the Trustees' action in denying him past service credit amounts to a breach of fiduciary obligation. As already noted, this court does not accept the notion that decision making in the granting or denial of benefits is, per se, a fiduciary activity.

## (6) Review of the Decision

### A. Standard of Review

In *Firestone Fire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the Supreme Court held that, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan," then judicial review of decisions denying benefit claims should be de novo. When a Plan falls within the *Firestone* exception, the court should review interpretations of the Plan and any factual findings using the "abuse of discretion" standard.[2] *Penn v. Howe–Baker Engineers, Inc.,* 898 F.2d 1096 (5th Cir.1990).

■ It is undisputed that the Plan documents here vest full authority and discretion in the Trustees to interpret and construe the provisions of the Plan and to decide to accept or to reject claims. Accordingly, the standard of review will be the more limited "abuse of discretion" standard.

### B. Legal Correctness

■ In determining the legal correctness of the interpretation by the Trustees, the court is required to consider the following three factors: (1) whether the Trustees have given a uniform construction to the Plan; (2) whether the interpretation is consistent with a fair reading of the Plan itself; (3) whether the interpretation results in any unanticipated costs. *Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53 (5th Cir.1990), cert. denied — U.S. —, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990); *Batchelor v. Intern. Broth. of Elec. Workers Local 861,* 877 F.2d 441 (5th Cir.1989).

■ If the trustees have not given the plan its legally correct interpretation, then the court must determine whether that interpretation amounts to an abuse of discretion. Id. In so doing, it is appropriate to consider: (1) the internal consistency of the plan under the trustees' interpretation; (2) any relevant regulation; and (3) the factual background of the determination and inferences of lack of good faith. *Batchelor,* supra at 445–448. When the interpretation of the trustees is in direct conflict with express language of the plan, there is a "very strong indication of arbitrary and capricious behavior." *Batchelor,* supra at 448 (quoting *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314 (5th Cir.1982)).

## (7) Uniform Construction

The Trustees insist that they have uniformly rejected applications for past service credit for pre-initiation apprenticeship service. They specifically cite a request made by two members at a meeting on July 29, 1987, at which time the Trustees rejected the request. Plaintiff is the only other person to have made a similar demand.

Defendants also rely upon the testimony of the Trustees that they have always considered, since the inception of the Plan in 1970, that only card carrying members of

---

**2.** Legal conclusions (statutory interpretations) on the otherhand are still subject to de novo review. See *Penn v. Howe–Baker Engineers, Inc.,* supra.

the Union were eligible for past service credit.

This is rather skimpy evidence of construction since it involves only three people and only two instances. It is apparent to this court that the Trustees applying the provisions of the original Plan did not authorize prior service credit for apprenticeship work, because the Plan, as quoted above, did not so provide. It is also apparent to the court that the Trustees have not applied the provisions of the 1976 amendment. Little benefit is obtained from this evidence of "uniform construction."

The following section of this opinion will demonstrate that the interpretation of the Trustees is in direct conflict with express language of the Plan. As the court noted in *Dennard v. Richards Group, Inc.*, 681 F.2d 306, 318 (5th Cir.1982):

> While the Committee points to the uniform construction of the Plan provisions and the fact that Dennard was not treated differently from any of at least five other employees who resigned or were discharged during the same time—an argument that the District Court found persuasive—we agree with the Eighth Circuit that even though consistently applied, "if the interpretation is unreasonable from the beginning, such an interpretation may still be arbitrary and capricious." *Morgan v. Mullins*, 643 F.2d 1320, 1324 n. 4 (8th Cir.1981). See also *Synder v. Titus*, 513 F.Supp. 926, 934 (E.D.Va.1987) ("being consistently wrong can hardly be sanctioned as right").

**(8) Consistency with the Plan**

■ It is quite apparent that the interpretation which the Trustees place upon the Plan provisions is in direct conflict with the clear language of the Plan itself. As quoted above, that Plan reads:

> An Employee will be credited with one Past Service Credit for each continuous and successive Plan Year, not to exceed twenty (20), before October 1, 1970, **in which he was dependent for livelihood upon his trade as an Electrician within the jurisdiction of the Union.** (emphasis supplied)

A fair reading of the original 1970 Plan and the 1976 amendment leads to the inescapable conclusion that the Plan was amended in 1976 so as to extend prior service credit to work performed as an apprentice.

The second paragraph of Section 4.01(b) of the Plan confirms the first paragraph:

> ... All Employees who were active members of the Collective Bargaining Unit represented by the Union on October 1, 1970, shall be given Past Service Credit for each full year of continuous and unbroken membership in the Collective Bargaining Unit ...

It is undisputed that apprentices were members of the collective bargaining unit and that they are clearly included within the definition of employees to whom prior service credit will be granted.

The decision of the Trustees is clearly and inescapably incorrect.

**(9) Unanticipated Costs**

■ *Batchelor v. Intern. Broth. of Elec. Workers Local 861*, 877 F.2d 441 (5th Cir. 1989) notes that courts reviewing the correctness of a Trustee interpretation, "must determine whether either of the interpretations would give rise to 'substantial unanticipated costs to the Plan' ... If a given interpretation would result in such costs, that interpretation is less likely to be legally correct." (Id. at 445).

The defendants, of course, present an argument that extending prior service credit to apprentices would result in unanticipated costs. They present the testimony of the Plan actuary as well as the financial records of the Plan.

The defendants argue that as many as 440 participants might be eligible to claim past service credit if that benefit is extended to apprentices and that such an action would cause a severe financial impact upon the stability of the Plan and called the Plan actuary to estimate such costs. Evidence presented by the plaintiff, however, casts considerable doubt upon the accuracy of those projections. The actuary estimated costs for all 440 potential applicants on the

basis of granting one, two, three and four years of prior service credit. The plaintiff has demonstrated to the court's complete satisfaction that there will certainly not be 440 participants who will be entitled to claim four years of past service credit. The plaintiff's evidence demonstrates that there was, until recent years, a wide variance in the length of time employees served as apprentices. Plaintiff served 27 months as an apprentice. Yet, of seven others who started at about the same time as plaintiff, only two served comparable periods. One served only five months as an apprentice, two others served only seven months, and a third only 13 months.

The actuary testified that granting additional credits would serve to increase the unfunded or actuarial accrued liability of the Fund. The Fund had $36,475,700 in assets as of the end of 1989. The present unfunded actuarial accrued liability is $2,754,000 and as the result of prior service credits already granted. The maximum, assuming that all 440 employees were granted the full four years of prior credit, would increase the unfunded liability by $3,186,900. The practical effect on this rather large Fund, according to the actuary, would be that increases in benefits might have to be postponed for a year or two.

The evidence presented does not demonstrate a significant financial impact upon the Fund, particularly because no firm evidence of how many employees will actually be eligible or the number of credit years each might be able to claim, was presented. The assumptions of the actuary are based upon simple hypothetical circumstances that have not been demonstrated to actually exist. As such, they are merely mechanical mathematical exercises.

Plaintiff's evidence establishes to a certainty that 440 participants will **NOT** be granted four years each prior service credit. Some of the 440 might be granted no credit because of their short time as apprentices; some one year or more. The evidence presented is not precise enough to make a reasonable estimate of the actual cost to the Fund.

Moreover, the Plan was amended in 1976 to extend prior service credit to apprentices, it was certainly anticipated that apprentices would be granted prior service credit because the amendment did exactly that. Accordingly, these costs are not, and cannot be said to be "unanticipated." The fact that some or all of the individual Trustees did not anticipate the costs, because of their incorrect interpretation, does not add weight to this part of the analysis.

This court concludes that the interpretation of the Trustees is legally incorrect.

## (10) Abuse of Discretion?

■ As noted above, in considering whether the Trustees' interpretation amounts to an abuse of discretion, it is appropriate that the court consider: (1) the internal consistency of the Plan under the Board's interpretation; (2) any relevant regulations and (3) factual background of the determination and inferences of lack of good faith.

### A. Internal Consistency

Neither party has pointed to any other provision of the Plan which would be inconsistent with the interpretation advanced by plaintiff and the court has found none. Accordingly, this is a zero factor.

### B. Relevant Regulations

Again, neither party nor court has found any regulation which would throw any light upon the matter.

### C. Factual Background

The court concludes that these Trustees adopted their construction because it was a very easy and shorthand method of drawing a bright line between eligibility for past service credits and non-eligibility. It was simple and clear. The date an employee was initiated into the Union was the date prior service credit began. The court also is convinced that the Trustees personally thought they were protecting the assets of the Plan by not extending prior service credit to apprentices and thus they were not individually in bad faith. Their inter-

**708**

pretation is, nevertheless, absolutely and clearly wrong. *Batchelor,* quoting *Dennard,* notes:

> The fact that a trustee's interpretation is not the correct one as determined by the District Court does not establish in itself arbitrary and capricious action, but it is a factor in that determination. **When the trustee's interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior.** (emphasis supplied) *Batchelor,* supra at 445.

The interpretation of the Trustees is in direct conflict with the plain and express language of the Plan. Under the circumstances, the court concludes that the interpretation of the Trustees was an abuse of discretion and that the court is obliged to overturn it.

For the foregoing reasons, there will be judgment entered in favor of the plaintiff and against the defendants, as prayed for.