Joseph P. CONNORS, Sr., et al., as Trustees of the United Mine Workers of America Health and Retirement Funds, Appellants,

v.

HALLMARK & SON COAL COMPANY, Appellee.

No. 90–7157.

United States Court of Appeals, District of Columbia Circuit.

Argued May 6, 1991.

Decided June 14, 1991.

Stephen J. Pollak, with whom Wendy S. White, Washington, D.C., and David W. Allen, were on the brief, Baltimore, Md., for appellants.

Barry V. Frederick, of the bar of the Supreme Court of Ala., pro hac vice, by special leave of the Court, Birmingham, Ala., with whom Luther Zeigler, was on the brief, for appellee. Richard McMillan, Jr., also entered an appearance, Washington, D.C., for appellee.

Before RUTH B. GINSBURG, SILBERMAN and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

In March 1987, the Trustees of the United Mine Workers of America Health and Retirement Funds ("the Trustees") brought this action in district court against appellee Hallmark & Son and other coal companies, alleging that the companies had failed to report and pay pension fund contributions due under national industry wage agreements of 1978, 1981, and 1984. In its July 12, 1990 order, the district court granted partial summary judgment for Hallmark, ruling that the Trustees' claims for the 1980–82 period were barred by the statute of limitations. We vacate the final judgment thereafter entered for Hallmark and remand for further proceedings.

## I.

As a signatory to the National Bituminous Coal Wage Agreements of 1978, 1981, and 1984 ("Agreements"), Hallmark is required to contribute to the United Mine Workers of America Health and Retirement Funds ("Funds"). Contributions are in the form of royalties, based on the number of hours worked and tons of coal produced, as well as the tons of nonunion coal the employer has purchased. Article XX, Section (d)(5) of the Agreements places a "self-reporting" obligation upon Hallmark and other employers to provide monthly statements to the Trustees of the Funds "showing on a mine-by-mine basis the full amounts due"; by the tenth day of the following month, the full amounts due must be paid. Under Article XX, Section (f)(2), if the Trustees "determine that there is reasonable cause to question the accuracy" of the reported amounts, the employer must make available to the Trustees the records "necessary to verify the accuracy of the sums paid."

In accordance with this last provision, the Trustees implemented a program in late 1978 of auditing employers' contributions to the Funds, in instances in which the Trustees suspected underpayments. Finding cause to suspect Hallmark of underpayments, the Trustees began an audit in late 1979 or early 1980. According to this audit, Hallmark had, between 1977 and August 1979, underreported the number of hours worked and tons of coal produced. The amount in question was relatively small—$5,535.20, exclusive of interest—and the Trustees raised no question as to unreported purchases of nonunion coal. Hallmark paid the amount requested.

In January 1983, the trustees requested records for a second audit of Hallmark, this time covering the period between September 1979 and and the beginning date of the audit. Seven months later, in August 1983, Hallmark provided the records and the audit began. Field work, completed by March 15, 1984, indicated that Hallmark had failed to pay some $60,619.72 in contributions on nonunion purchased coal, $9,055.59 in contributions on produced coal, and $139.08 in contributions on hours worked. (All figures are exclusive of interest.)

Just before the field report was completed, the District Court for the Western District of Pennsylvania enjoined enforcement of the "purchase of coal" clause, effectively barring the Trustees from collecting approximately 87% of the amount they believed Hallmark had failed to pay. *See In re Bituminous Coal Wage Agreements Litigation*, 580 F.Supp. 670 (W.D.Pa.1984). This state of affairs continued for almost twenty months, from February 21, 1984 until October 10, 1985, when the Third Circuit, on appeal, vacated the injunction. *See In re Bituminous Coal Wage Agreements*, 756 F.2d 284 (3d Cir.), *cert. denied*, 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985). Thereafter, in September 1986, the Trustees formally requested Hallmark to pay the delinquent contributions. Hallmark refused to pay, and the Trustees commenced this action on March 3, 1987.

## II.

The Trustees' complaint alleged that, by failing to provide accurate monthly reports and make required contributions to the Funds, Hallmark had violated section 301 of the Labor Management Relations Act

("LMRA"), 29 U.S.C. § 185,[1] and sections 502 and 515 (as amended) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1145.[2] Hallmark denied these allegations and raised twelve affirmative defenses. The ninth of these twelve defenses read, in full: "The plaintiffs' claims, or some of them, are barred by the applicable statute of limitations."

By February 1989, post-discovery settlement negotiations between the Trustees and Hallmark seemed likely to resolve all issues. *See* Appendix ("App.") at 181 (transcript of Feb. 6, 1989 status conference, at which Hallmark attorney Zeigler was "optimistic and confident" that an agreement would be "finalized and executed within a week"); *id.* at 189–90 (Feb. 16, 1989 letter from Hallmark attorney Frederick, informing the court that "[t]he Trustees and Hallmark have agreed in principle on all aspects of a settlement," with only "minor details" on "the particular language" to be worked out). The parties did settle all claims pertaining to the period after March 3, 1984.[3] But the settlement concerning the 1980–84 period fell apart over the statute of limitations issue. As Hallmark's lead attorney explained:

> The original settlement proposal came from someone other than myself, and it was made on the assumption that there was a six-year statute of limitations. And I guess that assumption arose because we assumed that at some point we might be ... in the Alabama court ..., and we always, or others always calculate, a potential liability based on the six-year statute applicable in Alabama. When I got involved in the middle of the settlement process, I just rode with that assumption. I woke up at the last minute and recognized that that assumption was wrong, that it is a three-year statute of limitations in the District that is applicable.

App. at 195 (transcript of June 2, 1989 status conference). Accordingly, Hallmark refused to settle claims for payments due more than three years before the Trustees filed suit.

Hallmark moved for summary judgment on the unsettled claims, arguing that the statute of limitations began to run on each monthly payment when it fell due, and that the three-year limitations period[4] had therefore expired for each claim for payment that came due before March 3, 1984. Hallmark added that the Trustees had indicated "[t]his year, ... for the first time," that the limitations period "should be tolled under the doctrine of 'fraudulent concealment.'" Hallmark argued that the Trustees, if they wished to assert tolling, should

1. Under 29 U.S.C. § 185(a),
   [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

2. 29 U.S.C. § 1145 provides that
   [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
   29 U.S.C. § 1132(a)(3) authorizes, *inter alia,* a fiduciary such as the Trustees to bring a civil action to enforce an employer's § 1145 obligation; § 1132(g)(2) provides that where a fiduciary prevails in such an action, the court shall award the plan (A) the unpaid contributions,

(B) interest on those contributions, (C) an amount equal to the greater of the interest or liquidated damages as specified in the plan (generally not to exceed twenty percent of the unpaid contributions), and (D) attorney's fees and costs.

3. The Trustees had, by December 1988, completed a third audit of Hallmark that revealed additional failures to report and make contributions between April 1984 and May 1987. During this period, Hallmark's delinquent contributions on unreported purchases of nonunion coal and coal produced allegedly amounted to $60,098.01 and $176.20, respectively. The parties settled these claims on July 6, 1989, the day before Hallmark's motion for summary judgment on the earlier claims.

4. Hallmark asserted that the relevant statute of limitations was to be found in § 12–301(7) of the District of Columbia Code, which establishes a three-year limitations period on breach of contract claims.

have alleged fraudulent concealment in the complaint. Because the discovery phase of the case had ended, Hallmark urged, the Trustees should not be allowed to alter the pleadings to insert new matter.

In their memorandum opposing summary judgment for Hallmark, the Trustees conceded that the applicable statute of limitations established a three-year period. They contended, however, that

> where, as here, a plaintiff must rely on a self-reporting system in collecting contributions, and where the defendant submits inaccurate reports, the statute of limitations is tolled until the plaintiff discovers, or with reasonable diligence could have discovered, the contract breach.

The Trustees stated that they did not discover Hallmark's inaccuracies until March 15, 1984, when the second field report was completed; thus, they maintained, even without taking account of the twenty-month injunction period during which the statute must be tolled, *see* D.C.Code § 12–304, the suit was timely filed.

The Trustees, at this point, did invoke the doctrine of "fraudulent concealment." They contended that another judge of the district court had applied that doctrine to toll the statute of limitations in circumstances virtually identical to those of the present case. *See Trustees of the United Ass'n [of] Full–Time Salaried Officers & Employees of Local Unions, Dist. Councils, State & Provincial Ass'ns Pension Plan v. Steamfitters Local Union 395 ("Steamfitters"),* 641 F.Supp. 444 (D.D.C. 1986) (allowing full recovery under ERISA and section 301 against an employer who, for fourteen years, had failed to make contributions and had submitted false reports). *Steamfitters,* as the Trustees observed, held that the pension fund was not required to allege that the employer intended to defraud the trust: "submission of a misleading report," the judge in *Steamfitters* ruled, "is, absent notice of facts contradicting it, sufficient to conceal a cause of action." *Steamfitters,* 641 F.Supp. at 447.[5]

As for Hallmark's charge that the Trustees should have alleged fraudulent concealment in their complaint, the Trustees contended that their opening pleading presented the factual circumstances—Hallmark's obligation to provide accurate monthly statements concerning hours worked, coal produced, and nonunion coal purchased, dishonored by Hallmark's submission of inaccurate reports—with sufficient particularity to indicate Hallmark's concealment.

The district court granted summary judgment to Hallmark. It agreed with Hallmark that distinct claims accrued, and separate limitations periods began, on each day that a monthly payment came due. *See Connors v. Hallmark & Son Coal Co.,* No. 87–0567, mem. op. at 11 (D.D.C. July 12, 1990). The district court further agreed with Hallmark that the Trustees were required to plead fraudulent concealment in their complaint, and that they had not done so with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.[6] *See id.* at 8–10. The court then ruled that the Trustees could not tardily invoke the doctrine of fraudulent concealment to toll the statute of limitations. *See id.* at 10–11. Thus, although the district court acknowledged that the clock stopped during the nearly twenty-month-long injunction against enforcement of the "purchased coal" clause, the court's judgment held time-barred all of the Trustees' unsettled claims, save two. *See id.* at 11–12. As to the two claims found timely, the court entered judgment in favor of the Trustees on one and set the other for trial. *See id.* at 12.[7]

---

**5.** The Trustees relied, further, upon *Waggoner v. Dallaire,* 649 F.2d 1362 (9th Cir.1981), the district court's chief authority in *Steamfitters,* and three district court decisions from other jurisdictions.

**6.** That rule provides, in pertinent part: "In all averments of fraud or mistake, the circum-

stances constituting fraud or mistake shall be stated with particularity."

**7.** Before bringing this appeal, the Trustees dismissed the latter claim, rather than go to trial with only $295.17, plus interest, at stake.

The Trustees moved for reconsideration. They argued, *inter alia*, that the court had incorrectly used Rule 9(b) to dispose of their case based on the complaint alone. Other courts applying the Rule 9(b) "particularity" instruction, the Trustees observed, had considered not just the complaint, but also supporting materials submitted in response to a motion for summary judgment. In the present case, the Trustees noted, they had submitted to the court a copy of the second audit, setting forth the precise dates on which Hallmark allegedly failed to make contributions, and the precise amounts involved; indeed, they had sent this document to Hallmark well before the complaint was filed. Accordingly, the Trustees contended, they had given Hallmark more than adequate notice of the circumstances "constituting fraud," and had provided the court with materials sufficient to defeat Hallmark's motion for summary judgment. *Cf., Connors*, mem. op. at 8–9 (purpose of Rule 9(b) is to "require a plaintiff to present information sufficient for the court to determine whether a valid claim for relief has been stated and for the opposing party to prepare an adequate pleading").

Before the court ruled on their motion for reconsideration, the Trustees submitted a supplemental memorandum, calling to the court's attention the Ninth Circuit's recent decision in *Northern California Retail Clerks Unions and Food Employers Joint Pension Trust Fund v. Jumbo Markets, Inc.*, 906 F.2d 1371 (9th Cir.1990). *Jumbo Markets* held, in circumstances virtually identical to those of the present case, that a claim for relief did not accrue, and the limitations period did not commence, until the trustees were or should reasonably have become aware that the company had failed to make contributions. This decision, the Trustees urged, furnished "an additional ground for reconsideration": their claims for relief did not accrue until March 15, 1984, when fieldwork on the second audit was completed. The complaint, filed on March 3, 1987, they argued, was therefore entirely within the three-year limitations period. On this straightforward analysis, neither equitable tolling

nor fraudulent concealment was even an issue, and thus the Trustees were not required to plead facts to support either theory.

Three weeks later, "[a]fter carefully considering [the Trustees'] motion" for reconsideration, the district court adhered to its original decision. *Connors v. Hallmark & Son Coal Co.*, No. 87–0567 (D.D.C. Sept. 21, 1990) (order denying reconsideration). The Trustees appeal.

### III.

The parties renew before this court the arguments they presented to the district court. The Trustees contend that their claims accrued, and the limitations period commenced, only when they became aware of Hallmark's underpayments and false reports. Alternatively, they maintain, even if one conceived that their claims accrued at the time of Hallmark's breaches, summary rejection of their "equitable tolling" or "fraudulent concealment" theory was nevertheless improper, because the allegations in their complaint were particular enough to satisfy Rule 9(b). At the very least, they argue, the materials they submitted in opposition to summary judgment for Hallmark were more than sufficient to satisfy that rule's particularity requirement; thus, the district court should not have granted summary judgment to Hallmark, and emphatically not without giving the Trustees leave to amend their complaint.

For its part, Hallmark contends that (1) the Trustees' claims accrued at the times of the alleged breaches; (2) the district court correctly ruled that the complaint failed to plead with particularity facts relevant to the fraudulent concealment theory; (3) the district court was within its discretion in refusing to accept the Trustees' accrual theory on motion for reconsideration; and (4) the "undisputed facts" showed that the Trustees had failed to exercise due diligence, entitling Hallmark to summary judgment on any theory.

Because we agree with the Trustees that their claims for relief did not accrue until

they became aware, or reasonably should have become aware, of Hallmark's delinquencies and false reports, we need not reach the parties' arguments concerning the fraudulent concealment theory.

## IV.

None of the statutory provisions under which the Trustees brought this action contains a statute of limitations. *See* 29 U.S.C. § 185 (LMRA); *id.* §§ 1132, 1145 (ERISA). In this situation, a court must, as a general rule, borrow the most closely analogous statute of limitations from the state in which the court sits. *See, e.g., Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 146–47, 107 S.Ct. 2759, 2762–63, 97 L.Ed.2d 121 (1987); *International Union, UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).[8] The parties agree, as they did in the district court, that the applicable statute is § 12–301(7) of the District of Columbia Code, establishing a three-year limitations period for breach of contract actions.

■ While courts thus generally determine the limitations period by borrowing from state law, they determine the time at which the federal claim accrued—the moment at which the limitations period began to run—by consulting federal law. *See, e.g., Dixon v. Anderson,* 928 F.2d 212, 215 (6th Cir.1991); *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990); *Day v. Morgenthau,* 909 F.2d 75, 78 (2d Cir.1990); *Corn v. Lauderdale Lakes,* 904 F.2d 585, 588 (11th Cir.1990); *Northern Cal. Retail Clerks Unions & Food Employers Joint Pension Trust Fund v. Jumbo Markets, Inc.,* 906 F.2d 1371, 1372 (9th Cir.1990); *Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1127 (3d Cir.1988); *Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir. 1988); *Newcomb v. Ingle,* 827 F.2d 675, 678 (10th Cir.1987) (*en banc*); *Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 127 (1st Cir.1987); *Blanck v. McKeen,* 707 F.2d 817, 819 (4th Cir.), *cert. denied,* 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 258 (1983). We review the district court's rejection of the Trustees' accrual theory *de novo.*[9]

■ The Trustees argue that the general accrual rule in federal courts is the "discovery rule," according to which a claim for relief does not accrue until the plaintiff discovers, or with due diligence should have discovered, "the injury that is the basis of the action." *Jumbo Markets,* 906 F.2d at 1372. Hallmark contends that the general federal rule is the "time of injury" rule, according to which a claim accrues when the plaintiff's right to resort to the courts is complete, whether or not she has discovered the injury. Hallmark allows that courts have applied the discovery rule in tort actions, such as personal injury or fraud, in which the injury on which a plaintiff sues was hidden. Hallmark notes, however, that the borrowed statute of limitations in this case applies to contract, not tort claims; it contends further that its

---

8. There are exceptions to this rule, notably in the case of civil RICO, where the Supreme Court has held that an analogous *federal* statute of limitations should be borrowed. *See Agency Holding Corp.,* 483 U.S. at 148–56, 107 S.Ct. at 2763–67 (adopting a limitations period from the Clayton Act); *see also id.* at 147–48, 107 S.Ct. at 2762–63 (reviewing other cases in which the Court has borrowed a federal statute of limitations); *Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385 (7th Cir.1990) (borrowing a federal statute of limitations for Section 10(b) of the Securities Exchange Act of 1934).

We note that for federal statutes enacted after December 1, 1990, Congress has prescribed a default limitations period of four years. *See* 28 U.S.C. § 1658.

9. Hallmark contends that because the theory was first raised on motion for reconsideration, the proper standard of review is the lenient abuse of discretion standard. Hallmark is correct that the abuse of discretion standard ordinarily applies to a district judge's decision *whether to consider* a new theory raised on motion for reconsideration. In the present case, however, the district court expressly stated that it had "carefully consider[ed]" the matters raised in the Trustees' motion. Thus, whether or not the Trustees' accrual theory was a "new argument"—and here we note the close resemblance between that theory and the Trustees' earlier claim that breach of a self-reporting obligation tolls the statute of limitations until discovery—the district court apparently decided the issue on the merits, in the same manner it decided other issues in the case. Accordingly, we do not review this matter differently from the other questions presented in this appeal.

underpayments between 1977 and 1979 (*see supra* p. 337) had put the Trustees on notice of the company's propensity to underpay.

At least eight federal courts of appeals have, within the last four years, agreed with the Trustees that the discovery rule is the general accrual rule in federal courts. As the Seventh Circuit has put it, the discovery rule is to be applied in all federal question cases "in the absence of a contrary directive from Congress." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir.1990); *see also Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir.1991); *Corn v. Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir.1990); *Alcorn v. Burlington Northern R. Co.*, 878 F.2d 1105, 1108 (8th Cir.1989); *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir.1988); *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988); *Alexopulos v. San Francisco Unified School Dist.*, 817 F.2d 551, 555 (9th Cir.1987); *Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987).[10] *But cf. Hamilton v. 1st Source Bank*, 928 F.2d 86, 87–90 (4th Cir.1990) (*en banc*) (rejecting application of discovery rule to Age Discrimination in Employment Act claim in view of direction by Congress that complainants file EEOC charges "within thirty days after the alleged unlawful practice occurred"). Judge Posner, writing for a Seventh Circuit panel, has explained that the "time of injury" rule can be considered analytically as but a particular instance of the discovery rule: if the injury is such that it should reasonably be discovered at the time it occurs, then the plaintiff should be charged with discovery of the injury, and the limitations period should commence, at that time. But if, on the other hand, the injury is not of the sort that can readily be discovered when it occurs, then the action will accrue, and the limitations period commence, only when the plaintiff has discovered, or with due dil-

igence should have discovered, the injury. *See Cada*, 920 F.2d at 450 ("Accrual is the date on which the statute of limitations begins to run. It is not the date on which the wrong that injures the plaintiff occurs, but the date—*often the same, but sometimes later*—on which the plaintiff discovers that he has been injured.") (emphasis added).

Considered in this light, application of the discovery rule in the present case is consistent with the practice, noted by Hallmark, of applying the time-of-injury rule in garden-variety breach of contract actions. In the latter sort of case—where the defendant communicates his repudiation of the contract or fails to deliver the goods on the appointed day—one would expect the plaintiff to become aware of the injury at the time it occurs. A court will therefore impute such awareness to the plaintiff and hold that the limitations period commenced at the time of injury, even if the plaintiff protests that she did not in fact become aware of the injury when it occurred. In other cases that can be characterized as belonging to "contract," however, the injury may not be so readily apparent. The instant action, we think, is such a case.

The Agreements that establish Hallmark's obligations to the Funds place primary responsibility for accurate contributions upon the employer mine operators, whose duty it is to calculate correctly the various factors that determine each company's contributions to the Funds—total hours worked, tons of coal produced, and tons of nonunion coal purchased from brokers or other operators. This information is, by its nature, accessible in the first instance only to the mine operators; for that reason, the Agreements require operators to report the information monthly to the Trustees. Nevertheless, the Trustees remain dependent upon the operators' honesty and accuracy: the records with which the Trustees might verify the accuracy of the operators' reporting—as well as the

---

**10.** An exception is in the area of antitrust, where the Supreme Court has held, as a matter of statutory interpretation, that a cause of action accrues at the time of injury. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). The relevant statute of limitations, however, is subject to tolling. *See id.* at 335–36, 91 S.Ct. at 804–05.

accuracy of their contributions—both originate and stay with the operators.

It is true, as Hallmark emphasizes, that the Agreements authorize the Trustees to conduct audits. The Agreements, however, also require the Trustees, before requesting an audit, to determine that they have reasonable ground to suspect a signatory employer of underpayment and misreporting. *See supra* p. 337. More than 4000 employers signed the 1981 Agreement. And, we repeat, the information that would lead the Trustees to suspect any one of these 4000 employers is in the hands of that employer. Auditing, therefore, even if pursued with the utmost diligence, cannot assure that mine operators will promptly pay their fair shares into the UMWA Funds.[11]

In short, breach of the employers' contractual obligations to contribute and report seems likely to be a hidden injury, similar to the type of injury that has long triggered the discovery rule. Furthermore, application of the discovery rule is consistent with Congress' intent in ERISA to provide "broad remedies" and "to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective ... recovery of benefits due to participants." S.Rep.No. 127, 93d Cong., 1st Sess. 35 (1973), U.S.Code Cong. & Admin.News 1974, pp. 4639, 4871.

The Ninth Circuit, and at least one district court outside that circuit, have so ruled. *See Jumbo Markets*, 906 F.2d at 1372; *Trustees of the Nat'l Automatic Sprinkler Indus. Pension Fund v. American Automatic Fire Protection*, 680 F.Supp. 731, 738 (D.Md.1988). Moreover, Hallmark has not informed us of any decision that, under similar circumstances, has barred a claim for delinquent ERISA contributions on the ground that the statute of limitations began to run at the time of breach, not discovery. *Cf. Connors v. Beth Energy Mines, Inc.*, 920 F.2d 205, 211–12 (3d Cir.1990) (applying Pennsylvania law of equitable tolling and barring claim, but only because Trustees were at least constructively aware of company's misreporting). We join the Ninth Circuit and hold that the Trustees' claims accrued only at the time when, in the exercise of due diligence, the Trustees would become aware of Hallmark's alleged inaccuracies.

## V.

Because the district court granted summary judgment to Hallmark, it had no occasion to determine whether Hallmark had in fact failed to make required contributions. Nor, since the court based its decision on Rule 9(b)'s pleading particularity instruction,[12] did it reach the question whether the

---

**11.** *Cf. Jumbo Markets*, 906 F.2d at 1373 ("That the trustees of the Trust Funds have their own duties to verify the basis of employer contributions does not diminish the responsibilities of the employers.").

**12.** We note, although the Trustees did not so argue on this appeal, the inconsistency between Hallmark's claim that the Trustees were obliged to plead fraudulent concealment in their complaint and the provision of Rule 8(c) that the statute of limitations is an affirmative defense. The Trustees were not obliged to anticipate this defense in their complaint. *See* C. Wright & A. Miller, 5 Federal Practice & Procedure § 1276 (1990) ("On occasion, a plaintiff's complaint will contain allegations that seek to avoid or defeat a potential affirmative defense; technically this is improper pleading because these allegations are not an integral part of plaintiff's claim.... [T]he court should treat plaintiff's references to the defense as surplusage."). Moreover, once the matter went to summary judgment and the court had before it a copy of the second audit, stating the precise months and amounts of al-

leged underpayments—the document Hallmark had received six months before the complaint was filed—the particularity *vel non* of the complaint was irrelevant. Even courts that have purported, on summary judgment, to apply the Rule 9(b) "particularity" standard to the complaint's allegations of fraudulent concealment have in fact considered affidavits and other materials in the record. *See, e.g., Pinney Dock & Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472–80 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988); *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975); *Schaefer v. First Nat'l Bank of Lincolnwood*, 509 F.2d 1287, 1297–98 (7th Cir.1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976); *see also Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 970–71 (5th Cir. Unit B Dec. 1981) (dismissal of complaint on Rule 9(b) grounds affirmed, but with leave to amend), *cert. denied*, 458 U.S. 1106, 102 S.Ct. 3484, 73 L.Ed.2d 1367 (1982).

Hallmark's argument that the Trustees should have anticipated a statute of limitations defense

Trustees acted with due diligence in discovering the alleged underpayments on March 15, 1984. The answer to the former question determines whether the Trustees ever had a good claim; the answer to the latter determines whether their claims are now barred by the statute of limitations. These matters are essentially factual, and the latter, at least, is clearly disputed. We therefore vacate the judgment and remand the case to the district court for further proceedings consistent with this opinion.

*It is so ordered.*

and therefore alleged fraudulent concealment in their complaint is further undermined by the facts of this case: Hallmark's original assertion of its statute of limitations defense was pure boilerplate, *see supra* p. 338, and until just be-fore summary judgment, two years after the complaint, the statute of limitations was a matter neither side regarded as dispositive. *See supra* p. 338.