# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-1783

_____

Union Pacific Railroad Company;                                    *
Missouri Pacific Railroad Company;                                 *
Union Pacific Corporation; Missouri-                               *
Kansas-Texas System Pension Plan For                              *
Non-Agreement Employees, by Ursula                                *
Fairbairn, Barbara Schaefer, and James                            *
Young, in their capacity as the pension                           *
committee,                                    *
                                              *
        Appellants,                           *
                                              *
    v.                                        *
                                              * Appeal   and   Cross-Appeal
from the
Bryan L. Beckham; Gary K. Bradshaw;                               *
    United States District Court
William E. Dixon; Mike L. Eudy;                                   *
    for the District of Nebraska.
Marshall W. Hales; Billy Joe Harmon;                             *

James M. Hentschel; Carl W. Holem;                               *
James D. Miller; Cecil Rhodes, Jr.; Paul                         *
J. Richter; Daniel A. Witte,         *
                                     *
        Appellees,                   *
                                     *
_____                  *
                                     *
Wyatt Company, The; Towers Perrin,                               *
                                     *
        Interested Parties,   *
                                     *
_____                  *
                                     *
Pension Plan For Salaried Employees of                           *
Union Pacific Corporation and *

Affiliates,                           *

                                      *

        Defendant,           *

                                      *

Secretary of Labor,          *

                                      *

        Amicus Curiae,       *

                                      *

Bryan L. Beckham; Gary K. Bradshaw;                              *
William E. Dixon; Mike L. Eudy;                                  *
Marshall W. Hales; Billy Joe Harmon;                            *
James M. Hentschel; Carl W. Holem;                              *
James D. Miller; Cecil Rhodes, Jr.; Paul                        *
J. Richter; Daniel A. Witte,  *

                                      *

        Appellees,            *

                                      *

Union Pacific Corporation; Missouri-                             *
Kansas-Texas System Pension Plan For                            *
Non-Agreement Employees; Pension                                *
Committee of the MKT Plan; Named                                *
Fiduciary-Plan Administration of the UP                         *
Plan (The "UP Plan Administrator"),                             *

                                      *

        Appellants.            *


        _____


        No. 97-1791

        _____


Union Pacific Railroad Company;                                 *
Missouri Pacific Railroad Company;                              *
Union Pacific Corporation; Missouri-                            *
Kansas-Texas System Pension Plan For                            *
Non-Agreement Employees, by Ursula                              *
Fairbairn, Barbara Schaefer, and James                          *

-2-

Young, in their capacity as the pension                         *
committee,                              *
                                        *
        Appellees,                      *
                                        *
    v.                                  *
                                        *
B r y a n  L. Beckham; Gary K. Bradshaw;                        *

W i l l i a m  E. Dixon; Mike L. Eudy;                          *

M a r s h a l l  W. Hales; Billy Joe Harmon;                    *

James M. Hentschel; Carl W. Holem;                              *
James D. Miller; Cecil Rhodes, Jr.; Paul                        *
J. Richter; Daniel A. Witte,   *
                                        *
        Appellants,                     *
_____                        *
                                        *
Wyatt Company, The; Towers Perrin,                              *
                                        *
        Interested Parties,    *
_____                        *
                                        *
Pension Plan For Salaried Employees of                          *
Union Pacific Corporation and *
Affiliates, for Salaried Employees of                           *
Union Pacific Corporation and Affiliates, *
                                        *
        Defendant,                      *
                                        *
Secretary of Labor,                     *
                                        *
        Amicus Curiae,                  *
                                        *
Bryan L. Beckham; Gary K. Bradshaw;                             *
William E. Dixon; Mike L. Eudy;                                 *
Marshall W. Hales; Billy Joe Harmon;                            *
James M. Hentschel; Carl W. Holem;                              *

-3-

James D. Miller; Cecil Rhodes, Jr.; Paul          *
J. Richter; Daniel A. Witte,     *
                                 *
        Appellants,              *
                                 *
Union Pacific Corporation; Missouri-              *
Kansas-Texas System Pension Plan For             *
Non-Agreement Employees; Pension                 *
Committee of the MKT Plan; Named                 *
Fiduciary-Plan Administration of the UP          *
Plan (The "UP Plan Administrator"),              *
                                 *
        Appellees.              *

                    _____

            Submitted: December 8, 1997
                  Filed: February 26, 1998

                    _____

Before McMILLIAN, MAGILL, and MURPHY, Circuit Judges.
                    _____

MAGILL, Circuit Judge.

        Employers and their employees have brought this
interlocutory appeal and cross-appeal of the district
court's grant of partial summary judgment on claims and
cross-claims for declaratory relief regarding the
employers' interpretations of their ERISA pension plans.
The district court held that the employees' cross-claim
challenges, filed in 1994, to the employers' 1988
interpretations of their plans were time-barred, but that
the cross-claim challenge to a 1992 amendment to one of
the employer's plans, which relied on the 1988
interpretation of its plan, was not time-barred. Because
we find that all of the cross-claims in this matter are
time-barred, we affirm in part and reverse in part.

-4-

## I.

Prior to 1988, the Missouri-Kansas-Texas Railroad Company (MKT) maintained a pension plan (the MKT Plan) for its employees. The MKT Plan provided for the payment of benefits to eligible MKT employees in accordance with the amount of "Credited Service" they accrued while employed by MKT. Under the MKT Plan, an eligible employee accrued "Credited Service" in accordance with the number of hours that the employee worked with MKT during a plan year.

In 1986, the Missouri Pacific Railroad Company (MPRR), a subsidiary of Union Pacific Company (UP), negotiated to acquire substantially all shares of stock in MKT. The Interstate Commerce Commission (ICC) approved the acquisition in May 1988, and on August 12, 1988, MPRR acquired substantially all shares of stock in MKT and assumed direct control over MKT's assets. Prior to the acquisition, UP maintained a pension plan (the UP Plan) for its employees which, like the MKT Plan, provided for the payment of benefits to eligible employees in accordance with the amount of "Credited Service" they accrued while employed by UP. Under the UP Plan, an employee accrued "Credited Service" in accordance with the number of hours that the employee worked with UP during a plan year.

After the ICC approved the acquisition, but before MPRR's direct control, MKT and UP provided the MKT employees with the option either to accept a voluntary severance package from MKT and terminate their employment prior to the acquisition date or to become employed, as

of the acquisition date, by UP. UP explained in explicit terms to the MKT employees that if they opted to become UP employees, then they would cease to accumulate "Credited Service" under the MKT Plan as of the acquisition date. UP also clearly explained that once the MKT employees commenced working for UP, they would begin accumulating "Credited Service" under the UP Plan but would not receive any "Credited Service" under the UP Plan for their pre-acquisition MKT service.

To specifically demonstrate the effects of the acquisition on the MKT employees' pension benefits under the MKT Plan and the UP Plan, UP distributed "fact sheets" to the MKT employees and held three open meetings where the employees were permitted to ask questions about the effect of the acquisition on the various plan benefits. Each fact sheet asserted that prior MKT service would not be used to determine a former MKT employee's accrual of "Credited Service" under the UP Plan. In addition, each fact sheet provided an example illustrating that post-acquisition UP service would not be used to determine an employee's accrual of "Credited Service" under the MKT Plan.

Rather than accepting the severance offer, several former MKT employees, including Bryan L. Beckham, Gary K. Bradshaw, William E. Dixon, Mike L. Eudy, Marshall W. Hales, Billy Joe Harmon, James M. Hentschel, Carl W. Holem, James D. Miller, Cecil Rhodes, Jr., Paul J. Richter, and Daniel A. Witte (collectively, the claimants), ceased employment with MKT and accepted employment with UP. The claimants concede that they received the UP fact sheets and that, as of August 1988, they were aware that "after the UP/MKT merger, [they] would cease earning Credited Service under the MKT Plan, and that [they] would not receive Credited Service under the UP Plan for [their] MKT employment." Witte Aff. ¶ 3, reprinted in III J.A. at 849-50.

On September 24, 1992, the UP Plan was amended to offer a voluntary early retirement incentive program (VERIP) to UP employees who had acquired at least four years of continuous "Credited Service" with UP as of December 31, 1992. Consistent with its benefits accrual

policy adopted and explained to the claimants in 1988, UP refused to consider former MKT employees' pre-acquisition service with MKT when determining their eligibility for the VERIP.  The VERIP expired in December 1992.

In 1993, the claimants sought legal advice concerning UP's refusal to count pre-acquisition MKT service as "Credited Service" under the UP Plan and post-acquisition UP service as "Credited Service" under the MKT Plan. Prior to this time, the claimants

assumed either that UP's determinations concerning "Credited Service" were proper interpretations of the plans or that UP intended to change the plans to bring about this result. See id. ¶ 4, reprinted in III J.A. at 850. In March 1994, however, the claimants wrote a letter to UP threatening litigation concerning the refusal to consider post-acquisition UP service when calculating benefits under the MKT Plan. UP referred the letter to the Pension Committee of the MKT Plan (MKT Plan Committee), which deemed the claimants' letter to be a request for benefits. On March 31, 1994, the MKT Plan Committee denied the claimants' request for benefits, asserting that UP service did not count as "Credited Service" under the MKT Plan.

On April 1, 1994, UP, Union Pacific Railroad Company, MPRR, and the MKT Plan filed a class action complaint for declaratory judgment under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, against the claimants. In their complaint, plaintiffs sought a determination that their construction of the MKT Plan and their refusal to count post-acquisition UP employment as "Credited Service" under the MKT Plan was neither arbitrary, capricious, nor an abuse of discretion. The claimants counterclaimed pursuant to 29 U.S.C. § 1132(a)(1)(B) and (3), naming UP, the MKT Plan, the MKT Plan Committee, the UP Plan, and the UP Plan Administrator as counterclaim defendants (collectively, the UP Parties). In their counterclaim, the claimants sought remedies under ERISA relating to the UP Parties' construction and implementation of the UP Plan, the MKT Plan, and the VERIP. After amending their counterclaim, the claimants alleged four causes of action (counts I-IV) against the UP Parties relating to their refusal to count

post-acquisition UP service as "Credited Service" under the MKT Plan, one cause of action (count V) against the UP Parties relating to their refusal to count pre-acquisition MKT service as "Credited Service" under the UP Plan, and one cause of action (count VI) against the UP Parties relating to their refusal to count pre-acquisition MKT service

as "Credited Service" when determining eligibility for the VERIP.[1]

The UP Parties moved to dismiss or stay the counterclaims because the claimants had failed to exhaust available administrative remedies under the UP Plan and the MKT Plan. The UP Parties argued that the claimants never appealed the MKT Plan Committee's denial of benefits and that the claimants never attempted to seek benefits under the UP Plan or the VERIP before filing their counterclaim. The claimants contended that exhaustion of administrative remedies would be futile and inappropriate because their claims were asserted as compulsory counterclaims to the UP Parties' Complaint. The district court agreed that requiring the claimants to exhaust their administrative remedies was futile because "[t]here is no indication that the position taken by the [UP Parties] since 1988 and in their complaint would be subject to change if the [claimants] initiated or participated in an optional administrative review process." Mem. and Order at 5 (D. Neb. June 2, 1995), reprinted in Appellants' Add. at 5.

The UP Parties subsequently filed a motion for summary judgment on the grounds that the claimants failed to state claims upon which relief could be granted and, alternatively, that their claims were time-barred. The district court dismissed counterclaim counts II and V (breach of fiduciary duty claims) for failure to state a

---

[1]The amended counterclaim also included a seventh count relating to UP's alleged failure to comply with various ERISA disclosure requirements. However, that count was not certified as a class claim and was not a subject of the underlying motions for summary judgment and, thus, is not before this Court on appeal.

-11-

claim.  The district court also dismissed counterclaim counts I, III, IV, and V as time-barred by the applicable Nebraska statute of limitations.  The district court refused, however, to dismiss counterclaim count VI (relating to the VERIP).

The UP Parties, after conducting a sua sponte administrative appeal of the

claimants' claims,[2] also submitted a motion for summary judgment on the merits, arguing that the district court must review the UP Parties' "Credited Service" interpretation under an abuse of discretion standard. The district court denied the motion, reasoning that deferential review was inappropriate here, where exhaustion was not required.

The district court, in accordance with 28 U.S.C. § 1292(b), certified each of its orders for appeal. The UP Parties appeal the district court's refusal to dismiss counterclaim count VI, the district court's refusal to require the claimants to exhaust their administrative remedies, and the district court's refusal to review their final administrative decision under a deferential standard. The claimants appeal the district court's dismissal of counterclaim counts I, III, IV, and V as time-barred. [3]

## II.

We review the district court's grant of summary judgment de novo, applying the same standards as the district court. See Mayard v. Hopwood, 105 F.3d 1226, 1227 (8th Cir. 1997). Summary judgment is appropriate only if, after viewing the facts and the inferences to be

---

[2]The UP Parties conducted the review on their own initiative and "invited" the claimants to submit documents for consideration. Only a few of the claimants accepted this offer, however, because the district court had already ruled that requiring the claimants to exhaust the administrative procedure would be futile.

[3]None of the parties' briefs address the district court's dismissal of counterclaim counts II and V for failure to state a claim. Accordingly, we will not address the district court's dismissal of these counts on this ground.

drawn from them in the light most favorable to the nonmoving party, the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

After reviewing the record, we find that each of the claimants' claims is time-barred.  Because ERISA does not contain a statute of limitations for actions seeking to recover plan benefits or to clarify rights to future plan benefits under § 1132(a)(1)(B), or for actions alleging violations of 29 U.S.C. § 1054(g) and (h), this Court looks to state law for the most analogous statute of limitations.  See Adamson v. Armco, Inc., 44 F.3d 650, 652 (8th Cir. 1995).  In this case, the parties agree that the most analogous state statute of limitations for counterclaim counts I, III, IV, V, and VI is Nebraska's five-year statute of limitations for actions on written contracts.  See Neb. Rev. Stat. Ann. 25-205(1) (Michie 1995); Johnson v. State Mut. Life Assurance Co. of Am., 942 F.2d 1260, 1263 (8th Cir. 1991) (en banc) (suit brought under § 1132(a)(1)(B) "should be characterized as a contract action for statute of limitations purposes").

When analyzing the effects of statutes of limitations, the Supreme Court has stated that "the length of the [limitations] period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones."  Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463-64 (1975).  Important policies, such as rapid resolution of disputes, repose for those against whom a claim could be brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses, underlie statutes of limitations.  See Wilson v. Garcia, 471 U.S. 261, 271 (1985).  Accordingly, statutes of limitations "for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for

-15-

particular litigants," Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) (per curiam), and strict adherence to such limitations periods "is the best guarantee of evenhanded administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980).

In this case, and despite determining the limitations period by analyzing state law, this Court looks to federal common law to determine the time at which a plaintiff's

federal claim accrues. See Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1990); see also Connors v. Hallmark & Son Coal Co., 935 F.2d 336, 341 (D.C. Cir. 1991) (citing cases). In a federal question case, and in the absence of a contrary directive from Congress, the "discovery rule," according to which a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation, is used to determine when a plaintiff's federal claim accrues. See Alcorn v. Burlington N. R.R., 878 F.2d 1105, 1108 (8th Cir. 1989) (cause of action accrues "when a claimant knows, or should know through an exercise of reasonable diligence, of the acts constituting the alleged violation"); see also Connors, 935 F.2d at 342 (citing eight circuits holding that "the discovery rule is the general accrual rule in federal courts . . . [and] is to be applied in all federal question cases"); Cada, 920 F.2d at 450 (holding that the discovery rule is "read into statutes of limitations in federal-question cases (even when those statutes of limitations are borrowed from state law)").

Consistent with the discovery rule, the general rule in an ERISA action is that a cause of action accrues after a claim for benefits has been made and has been formally denied. See Cotter v. Eastern Conf. of Teamsters Retirement Plan, 898 F.2d 424, 428-29 (4th Cir. 1990). Thus, a beneficiary cannot successfully argue that he was unaware of an injury after a claim for benefits has been formally denied. Nonetheless, and still consistent with the discovery rule, an ERISA beneficiary's cause of action accrues before a formal denial, and even before a claim for benefits is filed, "when there has been a repudiation by the fiduciary which

is <u>clear</u> and made known to the beneficiar[y]." <u>Miles v.</u> <u>New York State Teamsters Conf. Pension & Retirement Fund</u> <u>Employee Pension Benefit Plan</u>, 698 F.2d 593, 598 (2d Cir. 1983) (quotations and citations omitted); <u>see also</u> <u>Daill</u> <u>v. Sheet Metal Workers' Local 73 Pension Fund</u>, 100 F.3d 62, 66 (7th Cir. 1996) ("a cause of action accrues upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary," even if such repudiation occurs prior to the beneficiary's submission of a formal claim); <u>Schroeder v. Phillips Petroleum Co.</u>, 970 F.2d 419, 420 (8th Cir. 1992)

(per curiam) (agreeing with district court that cause of action accrued in 1986, when beneficiaries were clearly aware that they would not receive benefits, despite fact that beneficiaries had not yet filed applications for benefits); Martin v. Construction Laborer's Pension Trust, 947 F.2d 1381, 1385 (9th Cir. 1991) (cause of action accrues upon a "clear and continuing repudiation of [the beneficiary's] claim"); Cotter, 898 F.2d at 429 (absent a formal claim and a formal denial of the claim, a beneficiary's cause of action accrues at "the time at which some event other than a denial of a claim should have alerted [the beneficiary] to his entitlement to the benefits he did not receive").

In this case, the claimants were unequivocally informed by August 12, 1988, that their pre-acquisition MKT service would not be used to determine "Credited Service" under the UP Plan and that their post-acquisition UP service would not be used to determine "Credited Service" under the MKT Plan.  The claimants have averred that

> [s]ince 1986 . . . [the claimants] repeatedly have been informed by numerous individuals, including employee benefit department employees and the Chairman and Chief Executive Officer of the Union Pacific Railroad, that they would not receive any benefit credit under the UP Plan for their MKT service.  At no time has any corporate or UP Plan official indicated that this position would be changed, or even that it was under review.

Mem. of Law in Opp'n to Mot. to Dismiss or to Stay Defs.' Am. Countercl., Apr. 14, 1995 at 15-16 (footnote omitted).  One of the claimants submitted an affidavit

to the district court, asserting that

> [i]n or about August 1988, various corporate representatives of the Union Pacific Railroad informed me and other class members that after the UP/MKT merger, we would cease earning Credited Service under the MKT Plan, and that we would not receive Credited Service under the UP Plan for our MKT employment.

Witte Aff. ¶ 3, <u>reprinted in</u> III J.A. at 849-50.  Witte also asserted that at that time, "we thought we were being treated unfairly."  <u>Id.</u> ¶ 4, <u>reprinted in</u> III J.A. at 850.

Prior to the August 1988 acquisition, UP held several open meetings and distributed literature to explain to MKT employees that pre-acquisition MKT service would not be used to determine "Credited Service" under the UP Plan and that post-acquisition UP service would not be used to determine "Credited Service" under the MKT Plan.  The fact sheets distributed by UP stated that "<u>UP service after the merger date will be used for the accrual of pension benefits only under the UP Plan</u>."  Fact Sheet C, Question 11 and Answer, <u>reprinted in</u> Appellants' Add. at 74.  The fact sheets also announced that "[p]rior [MKT] service <u>will not</u> be used to determine accrual under the UP Plan for pension benefits."  <u>Id.</u>, Question 9 and Answer, <u>reprinted in</u> Appellants' Add. at 73.  The fact sheets also provided the following example to demonstrate how MKT service and UP service would be allocated when determining pension benefits under the different pension plans at retirement:

> Employee "C" has six years creditable service with MKT, joins UP and works four years before deciding to retire. . . . [Upon retiring,] Employee "C" will receive a pension benefit calculated on six years of service under the MKT pension plan and four years under the UP pension plan.

<u>Id.</u>

As of August 1988, the UP Parties had clearly and

unequivocally informed the claimants that their pre-acquisition MKT service would not count as "Credited Service" under the UP Plan and that their post-acquisition UP service would not count as "Credited Service" under the MKT Plan.  The claimants, at that time, believed that this allocation scheme was "unfair" and improper, and could have filed a cause of action challenging the UP Parties' interpretation of "Credited Service" under either of the plans.  Accordingly, we hold that the claimants' causes of action, as alleged in amended

counterclaim counts I, III, IV, and V, accrued in August 1988.[4] Because the claimants did not file their counterclaim until 1994, these counts are time-barred under the applicable five-year statute of limitations.

The claimants argue that even if counterclaim counts I, III, IV, and V are time-barred, counterclaim count VI cannot be time-barred because the VERIP was not offered until 1992. We disagree.

To prevail under counterclaim count VI, the claimants must establish that the UP Parties' interpretation of "Credited Service" under the UP Plan when determining eligibility for the VERIP is incorrect. See First Am. Answer and Countercl., Count VI, at 21-22, reprinted in I J.A. at 100-01.[5] The UP Parties' interpretation of

---

[4]The claimants' argument that exhaustion of remedies would be futile in this case supports this conclusion. When exhaustion is futile, an ERISA beneficiary's claim "accrue[s] at the time at which it became futile to apply for benefits, because . . . at that time there was a de facto denial of [the beneficiary's] claim." Barnett v. International Bus. Machs. Corp., 885 F. Supp. 581, 591 (S.D.N.Y. 1995); see also Schroeder v. Phillips Petroleum Co., 970 F.2d 419, 420 (8th Cir. 1992) (agreeing with district court that cause of action accrued in 1986 when facts demonstrated futility since 1986). The claimants argue that requiring them to exhaust their administrative remedies has been futile since August 1988, after the UP Parties had specifically informed them that they would not receive any "Credited Service" under the UP Plan for pre-acquisition MKT service and that they would not receive any "Credited Service" under the MKT Plan for post-acquisition UP service. Taking these allegations as true, the claimants' causes of action, as alleged in counterclaim counts I, III, IV, and V, accrued no later than August 1988--over five years before they filed their counterclaim.

[5]Count VI, in relevant part, provides:

71. Because UPC [Union Pacific Corporation] and the Plan

"Credited

---

Administrator erroneously determined that Counterclaim Plaintiffs were not entitled to any Credited Service under the UP Plan for their Credited Service under the MKT Plan, UPC refused to allow Counterclaim Plaintiffs to participate in the VERIP. The VERIP subsequently expired.

72. UPC and the Plan Administrator have denied Counterclaim Plaintiffs a UP Plan benefit to which they are entitled, i.e., early retirement with an enhanced pension . . . .

First Am. Answer and Countercl. at 22, ¶¶ 71-72.

Service" under the UP Plan when determining VERIP eligibility, however, is the same as their interpretation of "Credited Service" under the UP Plan when determining benefits, which is the basis of counterclaim count V. As we have held, the claimants are time-barred from challenging this long-standing interpretation.

"Where a complaint based upon an earlier event is time-barred, to permit the event itself to cloak with illegality that which was otherwise lawful in effect results in reviving a legally defunct" claim. <u>Lorance v. AT&T Techs., Inc.</u>, 490 U.S. 900, 911 (1988) (alterations, quotations, and citation omitted).[6] The claimants' attempt to utilize the VERIP to challenge the UP Parties' interpretation of "Credited Service" under the UP Plan is nothing more than an attempt to revive their time-barred claim concerning this interpretation. Because the claimants cannot successfully challenge the interpretation of "Credited Service" under the UP Plan, the claimants' challenge to the UP Parties' eligibility determination under the VERIP in counterclaim count VI must fail as a matter of law. <u>See Wilson v. International Bus. Machs. Corp.</u>, 62 F.3d 237, 240 (8th Cir. 1995) (defendant entitled to summary judgment if plaintiff cannot establish a factual dispute on an element of its cause of action (citing <u>Bialas v. Greyhound Lines, Inc.</u>, 59 F.3d 759, 762 (8th Cir. 1995))). Accordingly, the district

---

[6] Noting that <u>Lorance</u>'s specific holding has been abrogated by statute--42 U.S.C. § 2000e-5(e)(2)--the Seventh Circuit recently held that <u>Lorance</u>'s "reasoning remains persuasive outside of the Title VII/intentionally discriminatory seniority system context." <u>Huels v. Exxon Coal USA, Inc.</u>, 121 F.3d 1047, 1050 n.1 (7th Cir. 1997) (citation omitted).

court erred in failing to grant summary judgment to the UP Parties on this count.

## III.

For the foregoing reasons, we affirm the district court order dismissing counterclaim counts I, III, IV, and V as time-barred, we reverse the district court order refusing to dismiss counterclaim count VI, and we remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.