**Larry BOLDUC, Plaintiff,**

v.

**NATIONAL SEMICONDUCTOR CORP., Defendant.**

No. Civ. 98–133–P–C.

United States District Court, D. Maine.

Dec. 21, 1998.

---

James E. Fortin, Douglas, Denham, Rogers & Hood, William C. Nugent, Portland, ME, for plaintiff.

Michael Messerschmidt, Randall B. Weill, Preti, Flaherty, Beliveau & Pachios, Portland, ME, for defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Now before this Court is Defendant National Semiconductor Corporation ("National")'s motion brought pursuant to Fed. R.Civ.P. 56 for summary judgment on all counts of Plaintiff Larry Bolduc's Complaint. In his Complaint, Bolduc alleges that Nation-

al violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 1 ("FLSA"), and Maine's state counterpart to this law, 26 M.R.S.A. § 664, because it failed to compensate him at a rate of one and one-half times his hourly rate for hours worked for National in excess of forty hours per week (Count I). Bolduc further alleges that he was denied benefits during his employment with National to which he is entitled under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 ("ERISA") (Count II). Finally, Bolduc alleges that National failed to provide him, upon his written request, with copies of its employment benefit plans and asks this Court to impose a statutory penalty pursuant to section 1132(c) of ERISA (Count III).

## I. Background

The following undisputed material facts are taken from Plaintiff's Statement of Material Facts (Docket No. 20), Defendant's Statement of Material Facts (Docket No. 13), and the documents submitted as part of the record for purposes of this summary judgment motion. Starting on March 1, 1991, National negotiated a series of short-term agreements with Bolduc for his services as an independent contractor[1] in the position of Facilities Engineer/Project Manager. Defendant's Statement of Material Facts ¶¶ 4, 9, 11, Exhibits 1, 2. Bolduc worked continuously for National according to these agreements from March 1, 1991, through June 16, 1996.[2] Defendant's Statement of Material Facts ¶¶ 4, 13, 14. By virtue of his status as an independent contractor, Bolduc was not paid one and one-half times his hourly rate for the hours he worked in excess of forty hours a week and did not receive employment benefits. Affidavit of Mei Wong, Director of Corporate Benefits, ¶ 5; Defendant's Statement of Material Facts ¶¶ 6, 8; Plaintiff's Statement of Material Facts ¶ 2.

During the same period that Bolduc worked as a Facilities Engineer/Project Manager, as an independent contractor, at least ten other people worked for National as Facilities Engineers/Project Managers but were regarded as direct employees. Defendant's Statement of Material Facts ¶ 26. These individuals were treated by the company as salaried, professional employees, exempt from the FLSA's overtime requirement. Defendant's Statement of Material Facts ¶¶ 26, 27. National offered these and other qualified employees a range of employment benefits including medical and dental coverage, long-term and short-term disability, life, accident, and dismemberment benefits. Affidavit of Mei Wong, Director of Corporate Benefits, ¶ 3. Bolduc testified in his deposition that he knew that other employees, working in the position of Facilities Engineer/Project Manager, were receiving employment benefits. Bolduc's Deposition at 71; Plaintiff's Statement of Material Facts ¶ 2; Defendant's Statement of Material Facts ¶ 7. Indeed, according to the record, when Bolduc was first hired in March of 1991, David Russell, the Facilities Engineering Manager for National, told Bolduc that his job and responsibilities were comparable to those of National's exempt, salaried Facilities Engineers/Project Managers but that, because Bolduc was hired as an independent contractor, he would not receive benefits and would be paid at the same hourly rate for all hours worked in a week. Affidavit of David Russell, Facilities Engineering Manager, ¶¶ 6, 8; Defendant's Statement of Material Facts ¶¶ 5, 6; Plaintiff's Statement of Material Facts ¶ 2.

In May of 1995, Russell approached Bolduc and asked him to consider direct employment with National as a Facilities Engineer/Project Manager. Defendant's Statement of Material Facts ¶ 24. Bolduc declined and

---

1. Bolduc avers that "[t]he plaintiff was an employee of defendant." Plaintiff's Statement of Material Facts ¶ 1. However, it is clear that Bolduc was hired as and worked as an independent contractor. Bolduc's position is more clearly stated as that Bolduc *should have been treated as an employee, rather than an independent contractor* in regard to overtime compensation and employment benefits. *See* Plaintiff's Opposition to Summary Judgment (Docket No. 19) at 2–4.

2. In addition, Bolduc was employed by Fairchild Semiconductor from January 1983, to November 1987, and at some point toward the end of his employment, Fairchild Semiconductor was acquired by National. During this time, Bolduc was considered an employee and was eligible for and received employee benefits. Plaintiff's Answers to Defendant's Interrogatories ¶ 2. This employment period is not relevant to the claims made by Bolduc in this action.

explained that, because he had been an employee of National twice before and had been laid off, he preferred to remain an independent contractor. Defendant's Statement of Material Facts ¶ 25; Bolduc's Deposition at 44–45.

Bolduc never filed a claim for employment benefits with National's benefits department while he worked for National. Bolduc's Deposition at 62; Defendant's Statement of Material Facts ¶ 39. At some point after his employment with National terminated, however, Bolduc requested and received information regarding the employment benefits offered by National to its employees.[3] Defendant's Statement of Material Facts ¶ 46; Bolduc's Deposition at 60–61. Furthermore, after Bolduc consulted with an attorney, his attorney requested ERISA plan documents on November 24, 1997. Plaintiff's Statement of Material Facts ¶ 11; Defendant's Motion for Summary Judgment (Docket No. 12) at 26. National does not dispute that it failed to provide these documents until discovery in this case began in August of 1998. Plaintiff's Statement of Material Facts ¶ 12.

National agrees that Bolduc has presented material facts related to the characteristics of Bolduc's job responsibilities, compensation structure, and professional interactions with National sufficient to create a triable issue regarding whether, under the law, Bolduc should have been considered an "employee" rather than an "independent contractor" when he worked for National. Defendant's Motion for Summary Judgment at 9 n. 8; Defendant's Reply Memorandum (Docket No. 22) at 1–2. National contends that Bolduc's employment contracts were for a specified amount of time, never exceeding twelve months; that Bolduc understood that his relationship with National was not intended to last for an indefinite period of time; that Bolduc earned income from sources other than National between 1991 and 1996; that Bolduc paid self-employment taxes and his payroll checks from National were not subject to withholding taxes; that Bolduc had the opportunity to negotiate how much he was going to be paid per hour by National, and was not told he could only work Monday through Friday; and that Bolduc was never subject to a formal performance review by National. Defendant's Statement of Material Facts ¶¶ 11, 12, 20, 21, 22, 23, 29, 32, 36. Bolduc has asserted that, although he and National entered into a written contract for services, it was not at a fixed price; that he did not hire any assistants; that he did not supply, nor was he obligated to, any necessary tools, supplies, or materials for his work at National; that he was paid by the hour rather than by the job; and that all of his work was part of the regular business of National. Plaintiff's Statement of Material Facts ¶¶ 7, 8, 9. Accordingly, both parties have submitted material facts that create a triable issue as to whether Bolduc was an employee of National rather than an independent contractor.

The parties have also submitted facts that tend to show the nature of Bolduc's job responsibilities as a Facilities Engineer/Project Manager. According to the record, Bolduc was an engineer by training and education. Plaintiff's Statement of Material Facts ¶ 7. According to his deposition, Bolduc "managed projects" including building renovations and equipment installations. Bolduc's Deposition at 10. In this position, he had authority to purchase and set a budget for the projects he managed. Bolduc's Deposition at 37; Defendant's Statement of Material Facts ¶ 32. His job also required Bolduc to recommend subcontractors to be hired by National for work on the projects he managed and to choose vendors. Bolduc's Deposition at 37–38. Bolduc's decision making was reviewed by National on a monthly basis. *Id.* at 38.

■■■ Bolduc also contends that he did not have discretion to hire assistants, that his work performance was closely monitored by National, and that control of the projects was in the hands of National. Plaintiff's Statement of Material Facts ¶ 9, 10. These facts are supported by Bolduc's sworn affidavit

---

**3.** National avers that Bolduc requested the documents in 1993 or 1994. Defendant's Statement of Material Facts ¶ 46. Bolduc does not clarify in his Statement of Material Facts the year in which this request for documents was made.

submitted as part of the summary judgment evidentiary record. (Docket No. 21).[4]

## II. Analysis

Summary judgment is appropriate when the record shows there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). Once the moving party has come forward identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any" which "it believes demonstrate the absence of a genuine issue of material fact," the adverse party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986).

The trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The Court will not, however, pay heed to "conclusory allegations, improbable inferences [or] unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). If no genuine issue of material fact emerges, then the motion for summary judgment may be granted.

## A. Claim for violation of the Fair Labor Standards Act.

In Count I, Bolduc claims that National owes him compensation at a rate of one and one half times his hourly wage for the hours he worked in excess of forty hours per week during his term of employment. National has raised two arguments for summary judgment in its favor on Count I. National first argues that, even assuming that Bolduc should have been treated as an "employee" covered by the FLSA, he has not presented any factual evidence to raise a genuine dispute that he would not have been properly classified as a salaried professional, thereby exempt from the FLSA's overtime requirement. Second, National contends that Bolduc's recovery must be limited to pay earned subsequent to April 17, 1996, according to the two-year statute of limitations contained in the FLSA.

### 1. Learned Professional Exemption.

■■■ The FLSA provides employees protection from low wages and long hours. It does not provide such protection to independent contractors. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 726–27, 67 S.Ct. 1473, 1475–76, 91 L.Ed. 1772 (1947). In order to determine whether an individual is an "employee" for purposes of the FLSA, a court employs the well-established economic realities test. *See Id.* at 727–30, 67 S.Ct. at 1475–76. Pursuant to this test, a court is

4. Affidavits submitted for the Court's consideration on a motion for summary judgment pursuant to Rule 56 must be based on personal knowledge, set forth facts which would be admissible in evidence, and affirmatively show that the affiant is competent to testify to the matters described in the affidavit. Fed.R.Civ.P. 56(e). National asserts that Bolduc's affidavit is deficient because the *jurat* contained in Bolduc's affidavit fails to state that the facts contained in the affidavit are based on Bolduc's personal knowledge. This does render an affidavit deficient under Rule 56. The *jurat* in Bolduc's affidavit states: Personally appeared before me the above named Larry Bolduc and gave oath that the foregoing is true. Bolduc Affidavit. However, a deficient *jurat* may be cured by a proper declaration that the facts contained in the body of the affidavit are from the affiant's personal knowledge. *See Spickler v. Dube*, 635 F.Supp. 317, 321 (D.Me. 1986). However, nowhere in the body of Bolduc's affidavit does there appear any declaration

that the statements therein are based on personal knowledge. "Although Rule 56 has been liberally construed with respect to admissibility of affidavit's contents on summary judgment, its requirement of personal knowledge by affiant is unequivocal and cannot be circumvented." *United States v. Valore*, 152 F.R.D. 1, 2 (D.Me. 1993).

Notwithstanding the fact that Bolduc's affidavit likely is deficient, this Court need not determine whether the averred statements contained in his affidavit should be disregarded by this Court. For purposes of this summary judgment motion, these facts are submitted by Bolduc because they tend to show that he did not qualify for the professional exemption from the overtime requirement contained in the FLSA. Because this Court determines that a genuine issue of material fact remains with regard to Bolduc's exemption status without reliance on these facts, the Court will not rule on the deficiency of Bolduc's affidavit.

not limited by contractual terminology or by traditional common law concepts of "employee" or "independent contractor," but, instead, the economic realities of the relationship govern. *See Baker v. Flint Engineering & Constr. Co.,* 137 F.3d 1436, 1440 (10th Cir. 1998); *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1293 (3d Cir.1991); *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1058–59 (2d Cir. 1988); *Goldberg v. Warren Bros. Roads Co.,* 207 F.Supp. 99, 102 (D.Maine 1962). The focal point is whether the individual is economically dependent on the business to which he renders service or is, as a matter of economic fact, in business for himself. *Baker,* 137 F.3d at 1440. Courts examine the following factors to determine whether an individual is an employee and, thus, is covered by the FLSA: 1) the degree of control exercised by the employer over the worker; 2) the worker's opportunity for profit or loss; 3) the worker's investment in the business; 4) the degree of skill and independent initiative required to perform the work; 5) the permanence or duration of the working relationship; and 6) the extent to which the work is an integral part of the employer's business. *Id.* at 1440; *Brock,* 840 F.2d at 1058–59.

Here, for purposes of the summary judgment motion before it, the Court need not determine under the economic realities test whether Bolduc was an "employee" covered by the FLSA. National has conceded for purposes of summary judgment that a genuine issue of material fact exists on this record as to whether Bolduc's employment status during the years he worked for National as a Facilities Engineer/Project Manager was that of an "employee" rather than an independent contractor. Instead, National contends that the Court must still grant summary judgment in its favor on Bolduc's FLSA claim because, even if Bolduc should have been considered an "employee" by National, National has put forth sufficient evidence to establish as a matter of law that Bolduc *would have been* a salaried employee whose duties *would have* squarely qualified him for the professional exemption from the FLSA's overtime requirement as a matter of law.

The crux of National's claim is that if Bolduc had worked in the capacity of an employee, he would have been a Facilities Engineer/Project Manager. National treated Facilities Engineers/Project Managers as exempt professionals and paid them on a salary basis because of their training and responsibilities. Defendant's Statement of Material Facts ¶ 27. National contends that Bolduc has not put forth any evidence supported by the record to raise a genuine dispute regarding National's exempt treatment of its directly employed Facilities Engineers/Project Managers. According to National, it follows that there is no genuine dispute that Bolduc would have been an exempt employee under the FLSA and, thus, cannot sustain a claim for overtime compensation.[5]

The record supports National's argument that, had Bolduc been hired as a Facilities Engineer/Project Manager and treated as an employee rather than as an independent contractor, he would have been regarded by National as exempt from the FLSA's overtime provisions. As an employee, Bolduc would have worked in the position of Facilities Engineer/Project Manager. This is supported by the fact that when Bolduc was offered a permanent position at National in May of 1995, it was for that position of Facilities Engineer/Project Manager. Defendant's Statement of Material Facts ¶¶ 24, 25. Throughout the period of Bolduc's relationship with National, National treated all of its Facilities Engineers/Project Managers as salaried, exempt professionals, and none of these employees were paid overtime. Russell Affidavit ¶ 18; Defendant's Statement of Material Fact ¶ 27. It is established that no dispute exists on this record as to the contention that had Bolduc been hired as an employee at National, he would have worked in

---

**5.** It is not clear from his memoranda submitted in opposition to National's Motion for Summary Judgment what Bolduc's response is to National's position that Bolduc was an exempt professional under the FLSA. Instead of addressing National's argument that there is no dispute on this record that Bolduc was an exempt employee, Bolduc presses that he should have been considered an "employee" rather than an "independent contractor"—a position already conceded by National. Plaintiff's Response to Summary Judgment at 4–5.

the salaried position of Facilities Engineer/Project Manager and would have been treated as an exempt professional by National. Indeed, Bolduc has not contended that he would have been hired for a different position or that National erroneously treated its Facilities Engineers/Project Managers as exempt professionals.

■ The conclusion that Bolduc *would have been* working in a professional capacity and salaried, however, does not determine whether Bolduc was, in fact, an exempt professional when he worked for National. National would have this Court conclude that because Bolduc *would have been* in an exempt salaried position *if he had been* hired as an employee rather than as an independent contractor, he was *exempt under the FLSA* when he worked for National as a matter of law. This reasoning is circuitous. The issue is not simply whether the position of Facilities Engineer/Project Manager was *treated as exempt* by National. *See Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1075 (1st Cir.1995) ("... whether an employee is an exempt professional is independent of the title the employer ascribes to the position."). The issue of whether Bolduc was an exempt professional is independent of National's treatment of similarly situated employees with the same title. Indeed, it is entirely possible that National incorrectly treated its Facilities Engineers/Project Managers as exempt. A determination of whether an employee is exempt under the FLSA requires an examination of the day-to-day work of an employee. If this Court determined that Bolduc was properly considered an "employee," rather than an independent contractor, the next inquiry would be whether he qualified for the professional exemption. The Court would be required to examine the day-to-day duties of Bolduc in his position rather than rely on the fact that other employees with the same title and who were correctly considered employees were treated as exempt by National. Accordingly, at summary judgment the Court must examine the record and the material facts presented by the parties to determine whether, assuming he was an "employee," there is a genuine issue of material fact as to whether Bolduc's position was, in fact, rendered exempt from the FLSA provision requiring employers to pay their employees overtime.

The Court will first set forth the legal framework for its analysis. The FLSA provides, in relevant part, that

> no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] ... at a rate no less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a). "However, these overtime compensation provisions do not apply to 'any employee employed in a *bona fide* executive, administrative, or professional capacity ...'." *Reich,* 44 F.3d at 1070 (citing 29 U.S.C. § 213(a)(1)). The specific requirements of the professional exemption are not set forth in the statute. Rather, they are articulated in the regulations set forth by the Secretary of Labor. The relevant legal guidelines for determining whether an employee is an exempt professional are described in the Secretary's regulation, 29 C.F.R. § 541.3. The regulation enumerates several types of professional exemptions. Although National has not asserted the specific professional exemption under which Bolduc qualifies, because he worked as a Facilities Engineer/Project Manager, the so-called "learned professional" exemption described in section 541.3(a)(2) is the exemption that is arguably applicable. *See* 29 C.F.R. § 541.3(a)(1).

Exempted learned professions include law, accounting, engineering, architecture, nursing, and medicine. *See* 29 C.F.R. § 541.302. Pursuant to the Secretary's regulation, to be exempt from the FLSA's overtime requirement, an employee's "primary duty" must consist of "[w]ork requiring knowledge of an advance [sic] type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education...." 29 C.F.R. § 541.3(a)(1). The regulation further requires that

> the work [must entail] the consistent exercise of discretion and judgment in its per-

formance; ... [be] predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and [be] of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time....

29 C.F.R. § 541.3(b)(c). In addition, the employee must not devote more than 20 percent of his hours worked in the workweek to activities that are not an essential part of and necessarily incident to the work described in section (a)(1). *See* 29 C.F.R. § 541.3(d). In addition to the requirement that the day-to-day duties of the employee meet the above criteria, to qualify for the exemption, an employee must be paid on a salary basis. *See* 29 C.F.R. § 541.3(e); *Balgowan v. State of New Jersey*, 115 F.3d 214, 216 (3d Cir.1997); *Shockley v. City of Newport News*, 997 F.2d 18, 21–22 (4th Cir.1993); *c.f. Walling v. Yeakley*, 140 F.2d 830, 832–33 (10th Cir.1944) (holding that in most cases, the amount of salary is a pertinent criterion to whether the executive exemption applies).

 Whether or not a position is exempt from the overtime requirement is a mixed question of law and fact. *See Reich*, 44 F.3d at 1073. "The inquiry into exempt status remains intensely fact bound and case specific." *Bohn v. Park City Group, Inc.*, 94 F.3d 1457, 1461 (10th Cir.1996). A court determining whether a position is exempt under the FLSA must make findings of historical facts regarding the day-to-day duties of the employee and draw conclusions from the historical facts. *See Reich*, 44 F.3d at 1073. Lastly, the district court must make the ultimate legal conclusion of whether an employee is exempt. *See Id.* at 1073. The employer in an FLSA action bears the burden of establishing that its employees are exempt and exemptions are to be " 'narrowly construed against the employers seeking to assert them and their application ... limited to those establishments plainly and unmistakably within their terms and spirit.' " *Id.* at 1070 (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960)). In this case, as the movant for summary judgment, National has the additional burden of showing the absence of a genuine dispute about any material facts.

 This Court has thoroughly reviewed the papers and documents submitted on this Motion for Summary Judgment in order to examine the facts that tend to show the primary duties of Bolduc during his employment and determine whether his position was exempt from the FLSA's overtime requirement. A careful study of the record submitted on summary judgment supports the conclusion that the record does not suffice to show that the day-to-day duties of Bolduc fall within the professional exemption. Therefore, a genuine issue of material fact exists on this record as to whether Bolduc's position is exempt from the FLSA overtime requirement.

The core requirement of the learned professional exemption is that the duties of the position call for a person who is in a "learned profession" with at least a college degree in a specialized type of learning. *See* 29 C.F.R. § 541.302(a); *Dybach v. State of Florida Dep't. of Corrections*, 942 F.2d 1562, 1565 (11th Cir.1991) (determinative factor for professional exemption is that the job require a special degree and not the education in fact acquired by the employee). The regulation explicitly includes engineering as a typical learned profession. *See* 29 C.F.R. § 541.302. Bolduc is an engineer by training and education and he worked for National in the capacity of a Facilities Engineer/Program Manager. Plaintiff's Statement of Material Facts ¶ 7; Defendant's Statement of Material Facts ¶ 16. Bolduc testified in his deposition that employees at National who held this position "would have to have an engineering degree or at least a bachelor's degree of some nature." Bolduc's Deposition at 37. Also according to his deposition, Bolduc managed projects including building renovations and equipment installations and used his training in engineering in his job at National. Bolduc's Deposition at 10. Bolduc has not set forth any evidence that tends to show, nor has he argued, that he did not use his education and skill as an engineer in the position of Facilities Engineer/Program Manager. Overall, Bolduc's education and deposition testimony compel a finding that he had

the skill required to meet the learned professional exemption as it applies to engineers.

There is also evidence that Bolduc exercised discretion and that his work was predominantly intellectual rather than manual, mechanical, or physical. *See* 29 C.F.R. § 541.3(b)(c). The record supports the general proposition that Bolduc supervised the projects assigned to him by National and had authority to purchase materials and set a budget for the projects he managed. Bolduc's Deposition at 37; Defendant's Statement of Material Facts ¶ 32. Furthermore, he recommended subcontractors to National to be hired on the projects that he managed and he chose project vendors. Bolduc's Deposition at 37–38. This evidence, however, lacks the specificity that would compel a finding that Bolduc used discretion in his day-to-day activities as a Facility Engineer/Project Manager. The Court must have before it sufficient facts concerning the daily activities of the position to justify a legal conclusion as to whether Bolduc is professionally exempt. The statements made by Bolduc in his deposition are conclusory and general and do not describe Bolduc's specific job duties so that a judgment may be made whether he was exempt from the overtime provisions of the FLSA as a matter of law. *See Berg v. Newman,* 982 F.2d 500, 503 (Fed.Cir.1992) (holding that conclusory statements and a job description describing general requirements of the position were not specific enough for a court to rest a legal conclusion regarding exemption under the FLSA).

Furthermore, facts exist in the record that indicate that the final requirement of the learned professional exemption may not be satisfied. The Secretary's regulation requires that, in order to be exempt under the FLSA, the employee must be paid on a salary basis. *See* 29 C.F.R. § 541.3(e). According to the record submitted for purposes of summary judgment, Bolduc was paid on an hourly basis. Defendant's Statement of Material Facts ¶ 17; Plaintiff's Statement of Material Facts ¶ 7. National asserts that had Bolduc been hired to work as a direct employee, there is no genuine dispute that he *would have been* paid on a salary basis. It

supports this contention by providing evidence in the form of a sworn affidavit by the Facilities Engineering Manager that those Facilities Engineers/Program Managers who were regarded by National as employees were paid on a salaried basis. Defendant's Statement of Material Facts ¶ 27; Russel Affidavit ¶ 6. Regardless of whether he *would have been* paid a salary if National had treated him like a direct employee, Bolduc was, in fact, paid an hourly wage when he worked for National. It bears repeating that this Court may make legal conclusions only upon evidence before it and not upon the assertions made by. a party regarding what would have been true under a different set of circumstances.

To conclude, the record does not suffice to show that Bolduc's day-to-day duties fall within the professional exemption. National's argument that had Bolduc been treated as an employee rather than as an independent contractor he would have been treated as a salaried exempt professional is not determinative. Furthermore, the record lacks specific facts about Bolduc's day-to-day activities. Bolduc's statements in his deposition and the evidence put forth by National does not suffice to show that Bolduc's day-to-day duties fall within the professional exemption. Thus, the record does not provide sufficient specific evidence that Bolduc's daily duties required the frequent exercise of discretion and independent judgment. Given the scarcity of specific evidence in the record, Bolduc's status under the professional exemption criteria remains a genuine issue of material fact. *See Berg,* 982 F.2d at 503 (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). Accordingly, the Court denies National's Motion for Summary Judgment on Bolduc's FLSA claim for overtime compensation.

**2. Statute of Limitations.**

National contends that Bolduc's claim under the FLSA, for back overtime pay earned from March 1, 1991, until April 17, 1996, is barred by the two-year limitation period con-

tained in the statute. Bolduc does not contest this assertion in his opposition to National's motion for summary judgment.[6]

■ Ordinary violations of the FLSA are subject to the two-year limitations period contained in the statute. *See* 29 U.S.C. § 255(a). The statute begins to run as of the date of the alleged violation. *Id.* Bolduc filed this action on April 17, 1998, and seeks to recover overtime earned from March 1, 1991, until June 26, 1996. *See* Complaint (Docket No. 1). He has offered no argument nor any factual evidence that the statute of limitations should be equitably tolled. Bolduc is time barred under the FLSA from recovering overtime pay earned more than two years before he filed this action. Accordingly, as a matter of law, Bolduc may recover compensation only for overtime hours worked from April 17 1996, until June 16, 1996.[7]

### B. Overtime Claim Under 26 M.R.S.A. § 664.

Bolduc has also asserted a claim under 26 M.R.S.A. § 664 for overtime compensation. National has presented three arguments for summary judgment in its favor. First, National claims that because Bolduc would be exempt under the FLSA had he been treated as an employee, he is also exempt under section 664 of title 26. National also contends that the FLSA precludes a claim under state law for overtime compensation. Finally, National argues that Bolduc's claim under the state statute is time barred.

**6.** Despite Bolduc's apparent agreement with National on this point, this Court shall conduct the requisite analysis to determine whether the FLSA claim is time barred for the hours worked in excess of forty hours per week prior to April 17th, 1996.

**7.** National also argues that the three-year statute of limitations available for willful violations of the FLSA, permitting Bolduc to recover for overtime hours worked starting on April 17, 1995, should not apply. *See* 29 U.S.C. § 255(a). The three-year statute of limitations is available only if Bolduc demonstrates that National's violation of the FLSA was willful. *See Mills v. State of Maine,* 853 F.Supp. 551, 555 (D.Maine 1994).

### 1. Professional Exemption under 26 M.R.S.A. § 664.

Section 664 of Title 26, in relevant part, provides

it is ... unlawful for any employer ..., except as otherwise provided in this subchapter ... to require any employee to work more than 40 hours in one week, unless [one and one half] times the regular hourly rate is paid for all work done over 40 hours in any one week....

26 M.R.S.A. § 664.[8] Section 663(K) exempts from the definition of employee, any individual employed in "a bona fide executive, administrative or professional capacity, and who is paid on a salary basis of not less than $175 weekly." *See* 26 M.R.S.A. § 663(K). Just as the FLSA does, Maine's overtime law exempts professional employees paid a salary from the requirement that employers pay employees the overtime rate for hours worked in excess of forty hours per week.

The Law Court has counseled that it is appropriate to look to the FLSA and case law applying its professional exemption for guidance in applying the exemption contained in 26 M.R.S.A. § 663(K). *Gordon v. Maine Cent. RR,* 657 A.2d 785, 786 (Me. 1995). This Court has determined that a genuine dispute of material fact exists on this record as to the primary duties of Bolduc's position and whether they qualified him for the professional exemption contained in the FLSA. Thus this Court may only reasonably conclude that a genuine dispute also exists as to whether Bolduc's position qualifies for the professional exemption under state law. Hence, this Court will deny National's Mo-

Here, Bolduc has presented no argument, nor has he presented any factual allegations upon which an argument could rest, that National willfully violated the FLSA. Therefore, the two-year statute of limitations unquestionably applies to the FLSA claim brought in this action.

**8.** Pursuant to section 626–A of title 26, upon a judgment rendered in favor of any employee in any action brought to recover unpaid wages, such judgment shall include, in addition to the unpaid wages, a reasonable rate of interest, an additional amount equal to twice the amount of such wages as liquidated damages, and costs of suit including a reasonable attorney's fee. *See* 26 M.R.S.A. § 626–A.

tion for Summary Judgment on Bolduc's claim for overtime under 26 M.R.S.A. § 664.

## 2. FLSA Precludes Recovery Under 26 M.R.S.A. § 664.

National also contends that this Court must grant summary judgment on Bolduc's claim brought under 26 M.R.S.A. § 664 because the FLSA precludes Bolduc's claim under the state overtime law. Citing *Roman v. Maietta Constr., Inc.*, 147 F.3d 71 (1st Cir.1998), National argues that Bolduc's claim under the FLSA precludes his ability to bring a claim under state law. Defendant's Motion for Summary Judgment at 7–8. National mischaracterizes the *Roman* decision. The Court in *Roman* forbid the plaintiff recovery under section 664 of the M.R.S.A. for overtime violations when he had already received compensation under the FLSA for this claim. *Roman*, 147 F.3d at 74 (noting with approval that "[t]he trial court ruled that under both the FLSA and state law, [plaintiff] was entitled to liquidated damages in the amount of unpaid overtime...∴"). Thus, the *Roman* court held that a plaintiff is not entitled to a double recovery when he pleads both federal and state claims for the same overtime pay. It did not hold that a claim made for over overtime under the FLSA precludes a claim for overtime under state law.

■■■ Recovery under both a federal and state statute for the enforcement of the same right is clearly prohibited. However, parties are entitled to pursue claims under both state and federal law to vindicate the same right unless the federal law preempts the state claim. National has not cited any cases for the proposition that the FLSA preempts claims under Maine's overtime laws. Indeed, National steers clear of using the word "preemption" in its brief. By asking this Court to find that the FLSA "precludes a claim under state law for overtime" National is, indeed, asking this Court to hold that the FLSA preempts Maine's overtime law. However, National cites no authority when it proposes that "courts have consistently held that the language embodied within the FLSA should control the disposition of all substantive rights defined by that statute,

regardless of whether other rights are offered by state statute or common law." Furthermore, the Court of Appeals for the First Circuit has held that the FLSA does not preempt state legislation in the areas of wages and work conditions. *See Maccabees Mut. Life Ins. Co. v. Perez–Rosado*, 641 F.2d 45, 46 (1st Cir.1981). It may be that if he prevails at trial, Bolduc is limited to the remedy provided by the FLSA; however, he is free to pursue his claim under both state and federal law. Accordingly, this Court rejects National's claim that the FLSA precludes Bolduc's overtime claim under Maine law.

## 3. Statute of Limitations.

National also contends that Bolduc's claim brought under 26 M.R.S.A. § 664 for overtime accrued prior to April 17, 1996, is time barred. No relevant limitations period is provided in the statutory subchapter covering overtime compensation. *See* title 26, M.R.S.A. subchap. 7. Nor has the Law Court offered guidance on what period applies. National argues that due to the "contextual and linguistic similarities" between 26 M.R.S.A. § 664 and the FLSA, it is clear that the state law was intended to be the state counterpart to the federal law. National also points out that Maine's wage and hour record-keeping requirements, set forth at 26 M.R.S.A. § 665(1), require employers to keep records for a period of three years. According to National, it follows that the two-year statute of limitations (and the three-year statute of limitations for willful violations), that applies to claims under the FLSA, applies to claims under state law as well. *Id.* Disagreeing, Bolduc argues that Maine's six-year limitations statute, 14 M.R.S.A. § 752, which applies to all state civil actions, applies to this claim.

■■■ As National contends, federal law provides helpful guidance to the interpretation of state statutes that contain the same language as the state law in question. For example in *Maine Human Rights Comm'n v. Local 1361, United Paperworkers Int'l Union, AFL—CIO*, the Law Court looked to decisions by federal courts interpreting the federal statutory equivalents of the Maine

Act for guidance in the construction of the state statute. *Maine Human Rights Comm'n. v. Local 1361*, 383 A.2d 369, 375 (Me.1978). Furthermore, the Law Court has held that courts should look to the FLSA and case law interpreting the FLSA for guidance in applying the state law. *See Gordon*, 657 A.2d at 786. However, here the Maine legislature simply did not adopt the statute of limitations provision as the FLSA did. This Court will not adopt one for it. Maine has declared that its statute of limitations for civil actions is six years. The Court will, thus, apply the six-year statute of limitations to this action and deny summary judgment this claim. Accordingly, Bolduc is limited to recovering overtime compensation accrued during the six years prior to filing the Complaint in this matter. Bolduc may, therefore recover under state law overtime earned for hours worked in excess of forty hours a week from April 17, 1992, until June 26, 1996.

### C. Benefits Claim Under ERISA.

In Count II of his Complaint, Bolduc contends that National's failure to provide him with the same employee benefits it offered to its other employees violated ERISA and the terms of National's benefit plans. Bolduc seeks reimbursement for costs accrued during his period of employment with National for his and his family's health care. It is undisputed that Bolduc incurred medical and dental expenses for himself and his family during the period he was employed by National and that he did not receive employment benefits from any other source. Plaintiff's Statement of Material Facts ¶ 6; Plaintiff's Answers to Defendant's Interrogatories ¶ 21.

National presents three arguments to support summary judgment in its favor. First, National contends that Bolduc's ERISA claims are time barred under the statute of limitations. Second, National argues that Bolduc failed to exhaust his administrative remedies. Third, National asserts that Bolduc does not have standing to assert his claim against National because he is not a

beneficiary of nor a participant in its employment benefit plans.

### 1. Statute of Limitations.

 National contends that Bolduc's claim under ERISA is time barred. ERISA does not contain a statute of limitations for actions seeking to recover plan benefits under 29 U.S.C. § 1132(a)(1)(B).[9] Hence, this Court must look to state law for the most analogous statute of limitations. *See I.V. Services of America, Inc. v. Inn Dev. & Management, Inc.*, 7 F.Supp.2d 79, 85 (D.Mass.1998); *Trustees of the Local Union No. 17 Sheet Metal Workers' Apprenticeship Fund v. May Engineering Co., Inc.*, 951 F.Supp. 346, 348 (D.R.I.1997) (citing *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983)). In Maine, the statute of limitations for all civil actions is six years. *See* 14 M.R.S.A. § 752.

 To determine whether the claim is barred by the applicable statute of limitations, the Court must determine the date on which the plaintiff's federal claim accrued. Despite looking to state law to determine the applicable time period, this Court looks to federal law to determine the time at which a plaintiff's federal claim accrues. *See Union Pacific Railroad Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir.1998); *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C.Cir.1991) (citing cases); *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 127 (1st Cir.1987) ("Federal common law ... determines when the statute begins to run for [federal] claims and when the statute is tolled."). In a federal question case, and in the absence of a contrary directive from Congress, the "discovery rule," according to which a plaintiff's cause of action accrues, when he discovers or with due diligence should have discovered the injury that is the basis of the litigation, is used to determine when a plaintiff's federal claim accrues. *Union Pacific Railroad Co.*, 138 F.3d at 330.

 "Consistent with the discovery rule, the general rule in an ERISA action is

9. ERISA provides a time bar for breach of fiduciary duty claims. *See* 29 U.S.C. § 1113. However, Bolduc has not brought such a claim and this statutory provision, thus, does not apply.

that a cause of action accrues after a claim for benefits has been made and has been formally decided." *Id.* at 330. However, the statute of limitations in an ERISA action is not tolled simply because a plaintiff did not file a claim for benefits. A claim under ERISA accrues before a formal denial, and even before a claim for benefits is filed, " 'when there has been a repudiation [of the employee's claim for benefits] by the fiduciary which is clear and made known to the beneficiary.' " *Id.citing (Miles v. New York State Teamsters Conf. Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.1983), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983)). Here, Bolduc did not submit a claim for employment benefits that was formally denied by National. Bolduc's Deposition at 62; Defendant's Statement of Material Facts ¶ 39. The Court must, therefore, determine at what point National clearly communicated a repudiation of Bolduc's claim for benefits.

National contends that the cause of action accrued in March of 1991, when Bolduc was first hired as a Facilities Engineer/Project Manager. According to National, it was at this point that Bolduc knew that National would repudiate a claim by him for employment benefits. Bolduc knew, at this point, that he was being hired as an independent contractor and that, by virtue of this status, he would not receive employment benefits. Bolduc's Deposition at 13; Defendant's Statement of Material Facts ¶¶ 5, 6, 7; Plaintiff's Statement of Material Facts ¶ 2. Fur-thermore, Bolduc was aware that the other people working in the same position as he and who were regarded as employees by National qualified for these benefits. Bolduc's Deposition at 71; Plaintiff's Statement of Material Facts ¶ 2; Defendant's Statement of Material Facts ¶ 7. On the other hand, Bolduc contends that his cause of action under ERISA did not accrue until 1997, when he first became aware, after consulting with an attorney, that he had a viable argument that he had been erroneously treated as an independent contractor rather than as an employee and, as a result, had erroneously been denied employment benefits. Plaintiff's Opposition to Summary Judgment at 9.[10]

This Court finds that Bolduc's claim accrued in March of 1991, when he was aware that he would not receive employment benefits by virtue of his independent contractor status even though he worked in the same position as other employees who received these benefits. Bolduc was informed that he would not receive employment benefits in March of 1991. Bolduc's Deposition at 13; Defendant's Statement of Material Facts ¶¶ 5, 6, 7. Bolduc understood that this was because National had classified him as an independent contractor. Bolduc's Deposition at 13. Thus, in March of 1991, it was clear to Bolduc that a claim for benefits would be repudiated by National, and he testified in his deposition that this had been made clear to him.[11] Bolduc's Deposition at 62. Indeed,

10. National argues that the statements related to when Bolduc discovered the injury made by Bolduc in his affidavit contradict his earlier deposition testimony and must, therefore, be disregarded by the Court. National argues that Bolduc made the later contradictory statement in his affidavit so that the Court would believe that he became aware, or reasonably should have become aware, of his alleged injury in 1997. Defendant's Counter statement to Plaintiff's Statement of Material Facts and Affidavit of Larry Bolduc (Docket No. 23)at 7. In fact, Bolduc's testimony in his affidavit does not contradict his earlier deposition testimony. In his affidavit, Bolduc asserts that he first discovered in 1997 that he had a viable argument that he should have been considered an employee rather than an independent contractor. Bolduc's Affidavit ¶ 12. In his deposition, Bolduc testified that he discovered that he would not receive employment benefits because he was an independent contractor when he was first hired in 1991. Bolduc's Deposition at 13. As discussed in Section I of this opinion, National has challenged the validity of the affidavit. The Court need not resolve whether it should disregard the fact contained in the affidavit that Bolduc discovered he should have been considered an employee in 1997 because, as discussed below, it holds that Bolduc had sufficient awareness of the alleged ERISA violation to bring the claim in 1991.

11. Bolduc's argument that exhaustion of remedies would be futile in this case supports this conclusion. When exhaustion is futile, an ERISA beneficiary's claim "accrue[s] at the time at which it became futile to apply for benefits, because ... at that time there was a *de facto* denial of [the beneficiary's] claim." *See Union Pacific R.R. Co.,* 138 F.3d at 331 n. 4 (*citing Barnett v. Int'l Bus. Machs. Corp.,* 885 F.Supp. 581, 591 (S.D.N.Y.1995)). Bolduc argues that

at this point or shortly thereafter, Bolduc knew the reason why.

■ Accrual of a legal claim does not occur only, as Bolduc contends, when a plaintiff is aware of the legal theory upon which he may prevail. Although Bolduc was perhaps not aware that he had a valid claim that he should have been treated as an employee rather than as an independent contractor in March of 1991, he was aware that National refused to provide him with employee benefits because of the capacity in which he was employed. If Bolduc felt that this denial was unfair, he could have sought legal consultation at this point. Instead, Bolduc waited until 1997 to consult with an attorney who informed him that he may have a cause of action under ERISA. It would belie logic to fashion a rule whereby a cause of action accrues on the date a claimant consults with an attorney and discovers he or she may have an actionable claim rather than on the day he or she discovers the facts pertinent to this injury that may or may not give rise to the legal claim. According to the discovery rule, a claim for relief accrues when the plaintiff discovers the injury, not when he or she discovers whether or not he or she has a legal theory on which he or she will prevail in a legal forum.

The Supreme Court has counseled that statutes of limitations "for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants," *see Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (*per curium* ), and strict adherence to such limitations periods "is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980). Therefore, Bolduc's claim accrued when he was informed by National in March of 1991, that he would not receive employee benefits because he was an independent contractor. *See Union Pacific R.R. Co.,* 138 F.3d at 331–32 (holding that plaintiffs' claim accrued when they were in-

formed that their pre-acquisition service would not count as credited service under the new plan, not when legal consultation revealed that this interpretation may be unlawful under the plan). Bolduc had six years, starting in March of 1991, to bring a claim against National for his employment benefits. Instead, Bolduc waited until April of 1998. Because the argument that Bolduc's claim is time barred is dispositive of National's Motion for Summary Judgment, the Court will not address National's additional arguments.

### D. Claim Under ERISA for Statutory Penalties.

■ In Count III, Bolduc claims that National failed to provide him within thirty days, upon his written request, with copies of its employment benefits plans and asks this Court to impose a statutory penalty pursuant to section 1132(c) of ERISA. Section 1024(b) of ERISA provides that a plan administrator shall, upon written request of any participant or beneficiary, furnish him or her with employment plan documents that are required to be furnished under the statute. 29 U.S.C. § 1024(b)(4). Furthermore, section 1132(c) provides that a court may, in its discretion, fine a plan administrator who fails to furnish within thirty days requested information up to $100 a day from the date of such failure, 29 U.S.C. § 1132(c). Bolduc demands damages in the amount of $100 per day. Complaint ¶ 18.

According to Bolduc's affidavit, Bolduc's attorney in this matter requested plan documents in writing on November 24, 1997. Plaintiff's Statement of Material Facts ¶ 11. As with the other facts contained in Bolduc's affidavit, National asks this Court to disregard this fact because the affidavit is deficient. Defendant's Counter Statement to Plaintiff's Statement of Material Facts and Affidavit of Larry Bolduc at 2. It points out that the *jurat* is defective because it does not state that the facts contained in the affidavit are based on personal knowledge. *Id.* at 2–3. As discussed *supra* I, the Court generally agrees that Bolduc's affidavit is deficient be-

---

requiring him to exhaust his administrative remedies has been futile since March of 1991 because National regarded him as an independent contractor and, thus, ineligible for employee ben-

efits. Taking this allegation as true, Bolduc's cause of action accrued no later than March of 1991—over six years before he filed this action.

cause it has a defective *Jurat* but has not ruled dispositively. Again, it is not necessary to evaluate the legal sufficiency of Bolduc's affidavit. National has not disputed that Plaintiff's counsel requested plan documents on this date. Although it does not include it as a delineated fact in its Statement of Material Facts, National admits in its summary judgment brief that Plaintiff's counsel requested plan documents on this date. Defendant's Motion for Summary Judgment at 26. This Court will not ignore a fact based on a technicality that is not even disputed, let alone admitted, by the movant for summary judgment. It is undisputed on this record that National did not provide these documents to Bolduc until August of 1998. Because National does not dispute the fact that Bolduc's counsel requested the documents on November 24, 1997, and it is undisputed that National did not provide the documents until August of 1998, this Court finds that National failed as a matter of law to fulfill Bolduc's request for documents within thirty days as required by the statute. Therefore, this Court will grant summary judgment in favor of Bolduc on Count III. Accordingly, National's Motion for Summary Judgment on this claim must be denied.

The next issue for consideration is whether penalties should be imposed for National's violation of the ERISA disclosure requirements. Imposition of penalties for failure to provide documents to participants is committed to the discretion of the court. *Celi v. Trustees of Pipefitters Local 537 Pension Plan*, 975 F.Supp. 23, 28 (D.Mass.1997) (*citing Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 588 (1st Cir. 1993)). The Court may properly consider prejudice and bad faith as factors in deciding whether to impose penalties. *Id; see also Tucker v. Gen. Motors Retirement Program*, 949 F.Supp. 47, 56 (D.Mass.1996) (awarding no penalties because plaintiff was not prejudiced and defendants' actions did not evidence bad faith nor an intent to undermine the plaintiff's rights). The issue of whether or not penalties are appropriate for an ERISA disclosure violation is a fact-based determination and should be made by the ultimate finder of fact in the case. The Court will not determine on summary judg-

ment the appropriate amount of penalties that should be awarded in this case, and the appropriate amount of statutory penalties under 29 U.S.C. § 1132(c) will be determined by the Judge presiding at trial.

### III. Conclusion

Accordingly, the Court **ORDERS** that Defendant's Motion for Summary Judgment on Count I be, and it is hereby, **GRANTED** to the extent that this Court has found that Plaintiff is time barred from recovering overtime compensation under the FLSA during the period of March 1, 1991, until April 17, 1996, and is time barred from recovering overtime compensation under state law during the period of March 1, 1991, to April 17, 1992. Defendant's Motion for Summary Judgment on Count I is **DENIED** to the extent that Plaintiff seeks to recover overtime compensation under federal law for the period of April 17, 1996, to June 26, 1996, and under state law for the period of April 17, 1992, to June 26, 1996. The Court **ORDERS** that Defendant's Motion for Summary Judgment on Count II be, and it is hereby, **GRANTED**. The Court **ORDERS** that Defendant's Motion for Summary Judgment on Count III be, and it is hereby DENIED. Summary Judgment is **GRANTED** in favor of Plaintiff on Count III to the extent that the Court has found that Defendant's actions violated 29 U.S.C. § 1132(c). The Court declines to order statutory penalties based on this violation at summary judgment, and the issue of whether or not a penalty is appropriate in this case will be determined at trial.

**SO ORDERED.**